34 So.2d 909

**STATE v. SAIBOLD.**

No. 38782.

Feb. 16, 1948.

Rehearing Denied March 22, 1948.

Eugene Stanley, of New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Herve Racivitch, Dist. Atty. and Geo. McCulloch and Alexander Ralston, Jr., Asst. Dist. Attys., all of New Orleans, for appellee.

McCALEB, Justice.

Appellant was charged, tried and convicted of violating Article 81 of the Criminal Code, Act No. 43 of 1942, which denounces indecent behavior with juveniles. He was sentenced to serve six months in the Parish Prison and is appealing from the conviction and sentence on various grounds, set forth in two bills of exception taken to the action of the trial judge in overruling a motion in arrest of judgment and a motion for a new trial.

The motion in arrest of judgment is levelled at the sufficiency of the charges contained in the bill of information and the constitutionality of the statute. Three contentions are made by appellant as bases for the maintenance of the motion.

The first contention is that the bill of information merely states a conclusion of law and does not allege the offense denounced by Article 81. That Article reads in part: "Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, with the intention of arousing or gratifying the sexual desires of either person. * * *"

The bill of information, in substance, charges "that one Carl G. Saibold (w), being over the age of seventeen years, * * * on the first day of June 1947, * * * did then and there violate Article 81 of the Louisiana Criminal Code, relative to indecent behavior with juveniles, by placing his hands on the person of one Marline Menner (w) 11 yrs. with the intention of arousing the sexual desires of him, the said Carl G. Saibold, * * * contrary to the form of the statute * * *".

It is said that, since the gravamen of the crime is the commission of a lewd or lascivious act upon the person or in the presence of any child, no offense is stated in the bill because it does not allege that appellant committed a lewd or lascivious act.

The proposition does not impress us. The bill sets forth the act committed by appellant and charges that it was violative of the statute. This is proper pleading. It is not sacramental that the indictment or information be phrased in the language of the statute if it states every fact and circumstance necessary to constitute the offense. See Article 227, Code of Criminal Procedure.

▉ The next point raised by appellant is that Article 81 is unconstitutional[1] because the age limit "seventeen" used therein is so indefinite and meaningless that it is impossible to determine whether the law applies to persons over the age of seventeen years, months, days or seconds.

The contention is without merit. It would be absurd to hold that the lawmaker, in speaking of the commission of an offense by anyone "over the age of seventeen" upon any child "under the age of seventeen", was referring to anything other than the age in years of those involved. While criminal statutes are strictly construed so as not to include persons or acts not specifically set forth, this does not mean that the court will blind itself to the obvious.

To sustain the provision of appellant would require complete disregard of the provisions of Article 3 of the Criminal Code, which declares: "The articles of this Code can not be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."

▉ Appellant's chief assault upon the constitutionality of Article 81 is that the statute fails to define the crime of indecent behavior with juveniles—that is, it does

---

[1] Section 10 of Article I of the Constitution provides: "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; * * *."

not explain the meaning of a lewd or lascivious act, thereby requiring the court to define it and thus usurp the function of the Legislature. Our recent decision in State v. Truby, 211 La. 178, 29 So.2d 758, is relied on as complete authority for his position.

In the cited case, we were confronted with an attack on Article 104 of the Criminal Code which defined the crime of keeping a disorderly house as "the intentional maintaining of a place to be used habitually for any illegal or immoral purpose." We found that, insofar as the Article sought to prohibit the maintaining of a place used habitually for an "immoral" purpose, it was unconstitutional forasmuch as the word "immoral" was of such broad import that, standing alone or in association with the word "purpose", it was impossible to declare, with any degree of certainty, the type of conduct the Legislature sought to prohibit. We recognized that vast differences of opinion exist as to the sort of behavior which might be considered immoral and, hence, in each case[2] the judge or the jury would be required to apply his or its own conception of morals to the facts involved; thus stepping out of their judicial roles to assume legislative powers.

But the opinion in the Truby case does not sustain appellant's attack upon Article 81 for the reason that we view the language of the statute to be sufficient to define the offense therein denounced. It is true that the word "lewd", when used alone, is of a very broad scope. It is defined by Webster's New International Dictionary as "lay; * * * unlearned; unlettered; * * * wicked; lawless; bad; vicious; worthless; base" but it is also defined to be "lustful; libidinous; lascivious; unchaste * * *". And the word "lascivious" is defined as "wanton; lewd; lustful * * * tending to produce voluptuous or lewd emotions". Hence, it is seen that when the term "lewd" is associated with the word "lascivious" it connotes actions or gestures of a lustful and lecherous nature.[3]

The statute specifies indecent behavior to be the commission of a lewd or lascivious act "with the intention of arousing or gratifying the sexual desires" of either the actor or the juvenile. The necessity that the act he committed with the intention of arousing sexual desires gives to the words "lewd or lascivious" an even more confined meaning if, indeed, any added explanation were required. And, to settle any possible doubt, the drafters of the Code have suc-

---

[2] Except, perhaps, those cases of debauchery and lustfulness falling within the solid area (as Professor Morrow refers to it in his comment on the Truby case, 21 Tulane Law Review, 545) as to which no divergency of opinion prevails.

[3] This court has heretofore determined that the word "lewd", when applied to dancing, is very well and generally understood to mean indecent, lascivious, lecherous or the kind of dancing tending to excite lustful thoughts. See State v. Rose, 147 La. 243, 84 So. 643.

cinctly stated in a footnote the type of conduct the article is designed to cover. The comment states: "The article is intended to apply to behavior which falls short of sexual intercourse, carried on with young children. It is broader in scope than the former statute, [Act No. 65 of 1926] in that it includes children of both sexes, and the offender could be of either sex. The language is taken in part from the Proposed Illinois Penal Code (1937) § 32. The article also covers indecent sexual displays in the presence of children under the age of seventeen."

We hold that Article 81 of the Criminal Code is invulnerable to attack on the ground of unconstitutionality.

In a motion for a new trial, appellant asserts (1) that there was no proof offered to show that he was a person over seventeen years of age; (2) that the State failed to prove his guilt beyond a reasonable doubt; (3) that the lower court erred in accepting the testimony of the eleven year old girl involved, as her statement is so contradictory as to warrant the conclusion that she is unworthy of belief; (4) that the court erred in permitting a six year old child to testify as a witness when it was manifest, from her age and appearance, that she was incompetent; (5) that the court erred in not believing his testimony in which he denied the acts charged against him and (6) that it erred in refusing to give full credit to evidence of his good moral character.

Although set forth as six different grounds of error of fact and law committed by the trial judge, all of the complaints contained in the motion for a new trial, except Nos. 1 and 4, are really the same and may be considered as one—that is, that the judge erred in believing the witnesses for the State and in resolving that guilt had been proven beyond a reasonable doubt. Accordingly, we turn immediate attention to grounds 1 and 4 before discussing the facts of the case.

█ The first ground, that there was no proof offered to show that appellant was a person over seventeen years, is wholly without merit. Testifying in his own behalf, appellant stated "I have lived here in New Orleans since 1918 * * *" and it is further shown by the evidence that he has two sons, one married and the other serving with the occupational forces of the United States in Germany.

█ We find it rather strange that counsel for appellant complains, in the fourth ground for a new trial, that the court erred in permitting the six year old child, Vita Rose Cantrelle, to testify as a witness. We say this because an examination of the record discloses that, when the child was placed on the stand and the judge was examining her with respect to her ability to understand the nature of an oath and the consequences thereof, counsel for appellant objected to her being permitted to testify on the ground that her answers disclosed that she was incompetent.

This objection was sustained by the judge. However, as soon as the judge made the favorable ruling, counsel withdrew his objection stating "I want the Court to hear all of the facts in this case; let her testify."

Disposal of these contentions leads us to a discussion of the facts of the case. At the outset, it is well to observe that, under Section 96 of Article VII of the Constitution, as amended, our jurisdiction in appeals from the Juvenile Court for the Parish of Orleans extends to questions of fact as well as matters of law. Consequently, we are charged with the duty of examining the facts in criminal cases appealed from that court and of discerning from the record whether the State has proved the guilt of an accused beyond a reasonable doubt. However, in our review of the record on disputed questions of fact, we are bound, of necessity, to accord considerable weight to the conclusion reached by the trial judge on the facts as he has the advantage of seeing the witnesses, hearing them testify and observing their demeanor on the stand. See State v. LeBlanc, 213 La. 404, 34 So.2d 905.

Appellant is the uncle by marriage of Marline Menner who was in her twelfth year at the time the offense was allegedly committed. He resides on St. Maurice Avenue in the City of New Orleans and Marline lives with her widowed mother on Royal Street, near appellant's home.

Marline testified, in substance, that, on Sunday June 1, 1947, at about 3:00 o'clock p. m., she was going to the grocery store with her little cousin, Vita Rose Cantrelle; that, on the way back home, she stopped by her Uncle Carl's house; that he was sitting on the front steps;[4] that he asked her to sit on his lap, which she did, and that, after he had her on his lap he put his hand under her dress and pants, placing it upon her private parts; that he also played with her breasts and that she requested him to stop—telling him that she was going to tell her aunt (his wife) about it; that finally, when she was able to break away from appellant, she went into the house and told her aunt of the occurrence; that her aunt said that she (Marline) was trying to make trouble; that she left the house but before leaving repeated to appellant that he would have to stop his conduct with her; that appellant, who was then in the shed in the rear of the house which he used as a radio room, placed his hands to his ears as though he did not want to hear her and that she thereupon ran home and reported the affair to her mother, who immediately called the police. She further asserts that the occasion of Sunday, June 1, 1947 was not the first time that appellant had attempted to become familiar with her; that, about six weeks prior thereto, she spent the night at appellant's house sleeping in the same room with appellant but in a different bed; that, early

---

4 Box steps—a type quite common in many sections of the city of New Orleans.

in the morning, after appellant's wife had dressed and departed for the grocery store, appellant jumped in bed with her, hugged her and that, hearing the footsteps of his wife returning, he hurriedly retreated to his own bed. She says that she did not tell anyone about that occurrence because her father was very ill at the time (he subsequently died) and that she was afraid that news of this sort might kill him.

Marline's six year old cousin, Vita Rose Cantrelle, corroborates her story as to the incident in question, stating that appellant told her to go home and that, just as she was leaving, she saw him put his hand under Marline's dress.

Appellant admits that he was on his front steps on the day in question and that Marline sat on his lap but denies the act charged against him. In addition to his own statement, he produced witnesses who testified that the neighborhood in which appellant lives is thickly populated; that his house is directly across the street from a Catholic church and near a school and that there is a picture show, grocery and drug store in the vicinity. His wife denied that Marline told her that appellant was playing with her private parts, declaring that the child merely said that appellant was tapping her on the shoulder. Appellant also produced four character witnesses, including a Luthern minister, who stated that his morals were good.

Counsel for appellant argues that the testimony of the young girl is unworthy of belief because she contradicted herself in a number of particulars. It is true that Marline's statement is not entirely consistent in all of the details. But this does not provide a valid reason for concluding that she is unworthy of belief. In fact, it is rather difficult to conceive that a child of her age would concoct such a disgusting tale for the purpose of injuring an elderly man.

Moreover, it appears that some of appellant's evidence is none too impressive. For instance, his wife's statement that the child did not tell her of the commission of any lascivious act but that she merely reported that appellant was striking her on the shoulder does not ring true when considered in connection with the assertion (found in another part of her testimony) that "I told her, I said listen your Uncle Carl is too much of a nice man, why do you want to make trouble in my house on a big Sunday."

Then, too, there is another circumstance which may have some bearing on the credence of appellant's denial. Mrs. Menner, the child's mother, stated that, after Marline reported the occurrence, she went to appellant's home and called him but that he would not come out. Appellant does not attempt to explain his refusal to answer the call of the child's mother; in fact, he does not even allude to it in his testimony.

Counsel for appellant argues that the evidence does not sustain guilt beyond a

reasonable doubt as it is quite unlikely that anyone would be brazen enough to commit such an act as that charged in public view on a Sunday afternoon in a thickly populated neighborhood. Our answer to this contention is that the time and place of the offense is circumstance to be given consideration but it is not, of itself, a sufficient reason to cast doubt on the credibility of the testimony of the girl. As a matter of fact, it is not unreasonable to conclude that, with the little girl on his lap, appellant felt that he could conceal his act from the eyes of passers-by.

After a careful consideration of the record, we conclude that the trial judge was justified in holding that the evidence establishes appellant's guilt beyond a reasonable doubt.

The conviction and sentence are affirmed.

O'NIELL, C. J., absent.