HAWTHORNE, Justice.
 

 Defendant, Roland LeBlanc, aged 30, was charged with the crime of indecent behavior with juveniles, as denounced by Article 81 of the Louisiana Criminal Code. He was tried in the Juvenile Court for the Parish of Orleans and there convicted as charged and sentenced to serve six months in the parish prison. He has appealed.
 

 As his first assignment of error the defendant contends that the information filed in this case is fatally defective, and charges no offense known to the law ot this state, because it does not allege, in the language of this article, that the defendant committed “any lewed or lascivious act upon the person or in the presence of any child under the age of seventeen”, but merely charges that the defendant intentionally and indecently exposed his person in the presence of minors under the age of 17 years, with the intention of arousing the sexual desires of the defendant.
 

 This same contention is made in the casé of State v. Saibold, 213 La. 415, 34 So.2d 909, and we find the contention has no merit for the reasons stated therein.
 

 As his second assignment of error the defendant contends that Article 81 of the Louisiana Criminal Code is unconstitutional, null, void, and fatally defective because it does not state whether it applies to a person over the age of 17 years, 17 months, 17 days, 17 minutes, or 17 seconds, and that it does not state whether it applies to a child under the age of 17 years, 17 months, 17 days, 17 minutes, or 17 seconds; that, when an act or statute attempts to legislate between persons of certain ages, it is necessary that the Legislature expressly fix the ages attempted to be covered and not leave this to be determined by the court.
 

 This contention has been considered and found to be without merit in the Saibold case, supra, and for the reasons assigned therein we hold that the contention is without merit in this case.
 

 The defendant contends in his third assignment of error that the verdict in this case is contrary to the law and the evidence for the reason that the testimony given by the witnesses for the State, if true, would prove only an obscenity by the indecent public exposure of his person, as condemned by Article 106 of the Criminal Code, since the State utterly failed to bear the burden of proving any intention on the part of the defendant to arouse the sexual desires of either himself or the juveniles.
 

 We agree with the State that the act itself, when considered with all the facts and circumstances surrounding it, shows an intention on the part of the defendant to arouse his sexual desires. The testimony in this case shows that the defendant of his own free will, upon approaching these 16-year-old girls on the street, deliber
 
 *409
 
 ately exposed his person to them. He did not expose himself until he was in the presence of these two girls. His actions were deliberate and intentional, and he could have had no other purpose for such an act than to arouse his sexual desires.
 

 The comment to Article 81 of the Criminal Code shows that Article 81 was intended to cover such acts as the one committed in this case. As pointed out in State v. Davis, 208 La. 954, 23 So.2d 801, and in State v. Truby et al., 211 La. 178, 29 So.2d 758, it is proper and appropriate for us to consider the comments under the articles of the Code in our efforts to construe its provisions. The comment shows that the article was intended to apply to behavior which falls short of sexual intercourse, carried on with young children, and to cover indecent sexual displays in the presence of children under the age of 17.
 

 For these reasons there was a sufficient showing of intent to justify conviction under Article 81 of the Criminal Code, and therefore the defendant’s contention in his third assignment of error is without merit.
 

 Under the provisions of Article VII, Section 96, of our Constitution, all appeals from the Juvenile Court of the Parish of Orleans lie on questions of law and fact to this court. Pursuant to this mandate of the Constitution, it is necessary for us to consider the facts in the instant case, always bearing in mind the general principle of law that the accused is presumed to be innocent until his guilt has been established by competent evidence beyond a reasonable doubt.
 

 In determining whether the guilt of a defendant in any case which is appealable to us from the juvenile court has been established, we have only the record as made up in the lower court and are deprived of the benefit of seeing the witnesses and observing their conduct and demeanor while testifying either for the State or for the defense, and of observing the manner in which they give their testimony. The trial judge sees, hears, and observes all this, and therefore is in a better position to determine the credibility of the witnesses and the weight to be given their testimony — all of which is denied us on appeal.
 

 For these reasons, when the oral testimony is conflicting, we must give weight to the trial judge’s findings on questions of fact and to his determination of the credibility of the witnesses and the weight to be given their testimony.
 

 In the instant case, the State relies on certain witnesses for the identification of the accused as the perpetrator of the offense, and the defense is that these witnesses are mistaken in their identification of the accused, and, further, that he has an alibi. These being the issues, it is necessary that we consider the testimony of all witnesses, with the above principles of law in mind.
 

 According to the testimony offered by the State, on Wednesday, June 25, 1947, two
 
 *411
 
 16-year-old girl students of the John Mc-Donogh High School, located on Esplanade Avenue between North Dorgenois and North Rocheblave Streets, were attending the summer session of this school. At about 10:00 o’clock in the morning, during a- study period, they were walking on Esplanade Avenue toward North Broad Street and had reached a point about half a block from the school on the opposite side of the street, between North Dorgenois and North Broad Streets, when they observed the accused approaching them coming from North Broad Street and proceeding along Esplanade in the direction of the school. As this- defendant came close to the two girls, he at that time opened his pants and exposed his person. Thereupon the two girls turned back, crossed Esplanade, returned to the school, and reported the incident to the woman who was the principal of the school. Meanwhile the defendant continued along Esplanade, crossing over to the side of the street where the school was situated. ■ Upon receiving the report from these students, the principal immediately left the school and followed the accused in an automobile. When he boarded an Esplanade bus, she followed the bus to the end of its route at City Park.
 

 On Friday, June 27, two days later, the same two girls observed the defendant walking up and down North Dorgenois Street in the same block in which the school was situated but hn the opposite side of the street. They called the principal, and the two girls, the principal, and another teacher observed him for some time, walking up and down the street. When he crossed the street to the side of the school, the principal called the police. At the request of the police she continued to watch the accused proceed along Esplanade from North Dorgenois a distance of one block toward Broad, where he turned up Broad in the direction of Canal Street. When the police arrived at the school, the principal and the two girls got into the police car and were driven in the direction in which the accused had gone, overtaking him on Ursulines Avenue just off Broad, some four blocks away. At this time the principal and the two girls identified him to the police as the man whom they had seen on Wednesday, and he was arrested.
 

 The accused admitted being in the vicinity of the school on the 27th of june, stating that on this occasion he had left his home, some six blocks from the school, and was on his way to obtain certain items for his wife at a market, and for this reason it was necessary to pass in the neighborhood of the John McDonogh Pligh School.
 

 Although the defendant admitted that he was near the school on Friday, the 27th, it is his contention that on the 25th, the date of the offense, he left the hotel' where he was employed as a bellhop on the shift from 11:00 p. m. to 7:00 a. m., and reached his home about 7:30 in the morning. According to his testimony he went to a bakery and a grocery and purchased certain
 
 *413
 
 items, returned home for breakfast, put on his pajamas, went to bed about 8:00 o’clock, and remained in his house until-he left for work that night at about 10:30.
 

 In support of his alibi, defendant called four witnesses — his wife, brother-in-law, mother-in-law, and landlady, who was also his next-door neighbor. Their testimony, taken as a whole, corroborated defendant’s own testimony that he was inside his own home before, after, and at the actual hour of 10:00 a. m., which is the time the offense is charged as having been committed.
 

 From what we have said, it can readily be seen that the oral testimony of the State and defense witnesses is in conflict, and in finding the accused guilty the trial judge must necessarily have believed the testimony of the State’s witnesses.
 

 As we analyze and appreciate the testimony, if the identification of the accused resulted from merely a casual or fleeting glimpse of the perpetrator of the crime or possibly from the word of one person alone, we should be inclined to reverse the conviction. However, the two young girls as well as the principal of the school were very positive and certain in their identification of the accused, basing this identification on the fact that on the day the offense occurred the two girls had ample opportunity to observe the man’s appearance and immediately pointed out the offender to the principal, who in turn had him under observation for some time. Again, on the 27th, the two girls were positive that the accused, who appeared near the school, was the same man, and, due to the fact that he was acting in a manner which seemed to them suspicious, that is, by walking up and down the block by the side of the school, they called the principal, and all three of them observed the accused for some time. When the police arrived, the principal and the two girls proceeded with the police in the direction in which the accused had gone, and, when they overtook him, all three identified him as being the perpetrator of the offense and as the same man who had been near the school just a short time before. There is no doubt whatsoever that they were correct in their identification of the accused as being the same individual who was close to the school shortly before he was arrested, for defendant himself admitted in his testimony that he had walked by the school on this occasion. This leaves only the question of whether these three witnesses were correct in their identification of him as the man they had seen on the date the offense was committed, and the trial judge must necessarily have believed that they were.
 

 Considering all the testimony and bearing in mind the rule as to the weight to be given to the trial judge’s determination of the credibility of the witnesses and of the weight to be given their testimony, we cannot say that there is reasonable doubt of defendant’s guilt.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 O’NIELL, C. J., absent.