325 So.2d 854 (1976)
STATE of Louisiana in the Interest of Rowan WILLIAMS.
No. 12690.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1976.
Rehearing Denied February 9, 1976.[*]
*855 Watson & Watson by Philip B. Watson, Jr., St. Joseph, for appellant.
Thompson L. Clarke, St. Joseph, for appellee.
Before PRICE, HALL, BOLIN, MARVIN and GLADNEY, JJ.
Rehearing En Banc, Denied, February 9, 1976.[*]
PRICE, Judge.
This appeal was originally argued and submitted to a panel of three judges, a majority of whom decided the judgment appealed from should be modified or reversed. Pursuant to Louisiana Constitution Article V, Section 8(B) (1974), the case was reargued before a panel of five judges.
This is an appeal from the decree of the Sixth Judicial District Court acting in its capacity as Juvenile Court for Tensas Parish, declaring Rowan Williams, age 15, a delinquent child under the provisions of L. S.A.-R.S. 13:1570, and ordering his commitment to the Department of Corrections for an indefinite time. The petition initiating this proceeding, filed on January 30, 1975, alleges Williams is subject to the provisions of the statute defining a delinquent child in that he `did commit one act of burglary (Article 62, Criminal Code, State of Louisiana) in that during the night of Monday, November 25, 1974, he and another did illegally enter Testa's Exxon Service Station and did take approximately $168 in cash and silver ($53 in one dollar bills, $35 in five dollar bills, and $80 in silver). He also took the entire cash register."
This court is granted appellate jurisdiction of all matters appealed from the juvenile courts except criminal prosecutions of adults by Article 5, Section 10 of the Louisiana Constitution of 1974. This constitutional authority extends the scope of review to both the law and the facts.
Therefore, it is our constitutional duty to review the evidence presented by the State to determine if the trial court's finding was based on sufficient evidence to show "beyond a reasonable doubt" that the juvenile committed the act of burglary for which he was adjudged a delinquent. This standard of proof is required by the decision of the United States Supreme Court in the case of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
In its attempt to prove the participation of Williams in the burglary, the State relies on the testimony of an alleged accomplice, Joseph McTear, Jr., another juvenile who had previously confessed to the burglary and who had been committed to the Louisiana Training Institute. At the time of his testimony, McTear was also under a pending charge of attempted rape.
*856 The weight to be accorded the testimony of an accomplice is stated in State v. Lewis, 236 La. 473, 108 So.2d 93 (1959) as follows:
"Although the testimony of an accomplice, even though uncorroborated, is competent evidence, it is well settled that such evidence is subject to suspicion and should be received and acted upon with extreme or at least grave caution. State v. Feroci, 167 La. 78, 118 So. 699; State v. Matassa, 222 La. 363, 62 So.2d 609."
The testimony of McTear reflects that the idea to commit the burglary was his alone, and that he allegedly approached Williams to accompany him only a few minutes prior to the commission of the act. He admits they were not friends and had not discussed this matter previously at school. It was further established, the two boys had once had an altercation during and after football practice the preceding fall season.
It appears that McTear did not implicate Williams during his initial interrogation nor at the time of his adjudication as a delinquent. As we understand the record, this accusation against Williams occurred at about the time McTear was subsequently charged with attempted rape.
The only other evidence of a substantive nature presented by the State was the testimony of the owner of the station, Louis Testa, who described the method of entry and the amount of money believed to be in the cash register.
The father, grandfather and grandmother of the juvenile testified he was at home at all times on the night of the occurrence of the alleged burglary. Testimony of two of Williams' teachers was offered to show his good school record and general good character.
We conclude that the testimony of McTear when judged in the light of his record and all other surrounding circumstances shown by the record is not sufficient without other corroborating evidence to constitute proof "beyond a reasonable doubt" of the participation of Williams in the burglary and that the trial court erred in its adjudication based on the evidence before it.
For these reasons, the adjudication of the delinquency of Rowan Williams is annulled and vacated, and the petition of the State in the interest of the juvenile is dismissed.
Annulled and vacated.
MARVIN, J., dissents and assigns written reasons.
GLADNEY, J., dissents for the reasons assigned by MARVIN, J.
MARVIN, Judge (dissenting).
I respectfully dissent. I agree that under the law, a juvenile is to be afforded essentially the same rights as an adult and that our scope of review extends to the law and the facts. The standard by which a juvenile judge determines in effect the delinquency of a minor charged with a crime, is the standard of reasonable doubt. The standard by which we determine the correctness of the juvenile judge's determination is manifest error.
Burglary is the unauthorized entry of a structure (here the service station building) with the intent to commit a felony or any theft. R.S. 14:62. The State was required to prove each element: (1) the unauthorized entry and (2) the intent to commit a felony or any theft. The service station owner testified and without question proved the unauthorized entry and a theft of his cash register and its contents, which was some amount of money. In a theft case (R.S. 14:67) it would be necessary for the State to prove the amount of money or value of the things stolen and *857 beyond a reasonable doubt. This is not necessary in a burglary charge.
The accomplice testified that Williams participated in the burglary, entered the building, assisted in removing and carrying the cash register and received some of the money from the cash register. Williams himself testified that he was away from his home for more than an hour on the night of the burglary. On cross-examination he stated he did not start to go home until "around 8:30 p.m." (the burglary happened shortly after 8:00 p. m.) and that he played cards before that time with several other young men whom he could not name. Before the card game he had been to a place called "Woods' Place." Williams named four individuals whom he had seen there. None of these parties from the card game or from Woods' Place testified. The defense was alibi, but testified to by grandparents and father. They testified generally as the majority states that Williams was "at home at all times" on the night of the burglary.
The juvenile judge was faced with a credibility issue. She observed the witnesses and their demeanor while testifying. She heard the vocal inflections and hesitancy vel non of witnesses in answering questions. The juvenile judge said:
"I believe the testimony of [the accomplice]. Mr. Williams stated that he didn't make any threats [to witnesses] but he glared at some of these witnesses all during the trial and the court does not appreciate that . . . Your last witness [speaking to defense counsel]. . . looked like he was frightened to death when he was testifying in this courtroom, and that should not be. I don't like for people to be afraid to tell the truth in the courtroom ... I can't see that [the accomplice] had one thing to gain by accusing this young man. He was already convicted . . . There has been no deal, and I believe he was telling the truth when he said they went together."
Sitting in review of a decision from a juvenile court (before the time appellate review was transferred to the Courts of Appeal but when law and fact was reviewable, as now) and where the defense was alibi, the Supreme Court in State v. LeBlanc, 213 La. 404, 34 So.2d 905 (1948) said:
". . . it is necessary for us to consider the facts in the instant case, always bearing in mind the general principle of law that the accused is presumed to be innocent until his guilt has been established by competent evidence beyond a reasonable doubt.
"In determining whether the guilt of a defendant in any case which is appealable to us from the juvenile court has been established, we have only the record as made up in the lower court and are deprived of the benefit of seeing the witnesses and observing their conduct and demeanor while testifying either for the State or for the defense, and of observing the manner in which they give their testimony. The trial judge sees, hears, and observes all this, and therefore is in a better position to determine the credibility of the witnesses and the weight to be given their testimonyall of which is denied us on appeal.
"For these reasons, when the oral testimony is conflicting, we must give weight to the trial judge's findings on questions of fact and to his determination of the credibility of the witnesses and the weight to be given their testimony.
"In the instant case, the State relies on certain witnesses for the identification of the accused as the perpetrator of the offense, and the defense is that these witnesses are mistaken in their identification of the accused, and, further, that he has an alibi. These being the issues, it is necessary that we consider the testimony of all witnesses, with the above principles of law in mind." 34 So.2d 907.
*858 In LeBlanc, the Supreme Court affirmed the juvenile judge.
In my opinion, this court should follow this standard and affirm the juvenile judge.
GLADNEY, J., dissents for the reasons assigned by MARVIN, J.
NOTES
[*] Marvin, J., dissented; Smith, J., recused.