CULPEPPER, Judge.
Ronnie Givens was brought before The Juvenile Court for the Parish of Lafayette on a petition alleging he is a delinquent. He was charged with having committed simple criminal damage to property as defined in LSA-R.S. 14:56. After a hearing, the judge found Ronnie did commit the acts of vandalism complained of and declared him a delinquent child. The court sentenced him to the custody of the Department of Corrections for an indefinite period. This sentence was suspended upon the primary condition that Ronnie Givens admit himself and actively participate in Adolescent Unit # 28 at the Central Louisiana State Hospital located in Pineville, Louisiana. From this judgment, Ronnie Givens now appeals.
The substantial issue on appeal is whether the evidence at the hearing was sufficient to prove beyond a reasonable doubt that Ronnie committed the offense.
This matter began on November 27, 1976 with the vandalism of Acadiana High School which is located in Lafayette Parish. *296 Extensive damage was done to the interior of the building. The crime was reported by the local news media and discussed by the students returning to the school after Thanksgiving vacation.
Another crime must also be mentioned at this point as it plays a part in the case at hand. This second crime was the firebombing of the home of Mr. John D. Thompson of Lafayette Parish, Louisiana, in the early morning hours of November 29, 1976. On December 1, Ronnie confessed to the firebombing, and he was charged with the offense and placed in the Lafayette Juvenile Detention Home on the same day. He remained there until his hearing in February of 1977 on the school vandalism charge.
It was in late December, while Ronnie was in the detention home, that he told a fellow inmate, Kenneth Hasha, that he was the one who perpetrated the acts of vandalism at Acadiana High School. Hasha reported Ronnie’s admission to juvenile officers, who investigated the matter further. They subsequently filed the present petition in Juvenile Court on January 7, 1977, asking that Ronnie be adjudged a delinquent child on the basis of his committing criminal damage to property. At the Juvenile Court hearing, Ronnie admitted making the confession to Kenneth Hasha, but he said it was not true. He testified he meant only to impress Kenneth Hasha, who he thought would keep a confidence and whom he would never see again after their brief stay at The Home.
At the hearing, the evidence presented by the State consisted of testimony by Kenneth Hasha, several juvenile officers, and the principal of Acadiana High School. Kenneth Hasha testified to the detailed confessions Ronnie Givens had made to him on December 28 and on several days thereafter. Hasha said Givens told him about breaking in the school and about the damage done to clocks and trophy cases, to lights and ceilings, and to the assistant principal’s office door.
The juvenile officers testified that their investigation resulted in no evidence or any factual information, other than Kenneth Hasha’s statements, which would directly connect Givens to the vandalism of the high school. Each time these officers questioned Ronnie Givens about the Acadiana incident, he denied having committed the vandalism and denied knowing anything about it other than what he had read in the newspapers and heard from friends and family.
Mr. Dave Cavalier, who had been the assistant principal at Acadiana High School while appellant was a student there, recalled several minor discipline problems involving the appellant. These did not, however, involve damage to property, and at no time did Ronnie Givens ever utter a threat toward the school or Mr. Cavalier.
Evidence presented by the appellant consisted of the testimony of his family, and a friend. The appellant’s friend testified that Ronnie Givens was present when the brother of this witness related the damage he saw at the school as he returned to classes after Thanksgiving vacation. This defense witness also knew Kenneth Hasha and told of one incident the previous summer when Hasha had driven up in a fancy car which he claimed to have stolen. Ronnie Givens was present at this encounter.
The appellant’s sister was a student at Acadiana High School in November of 1976. She testified that she told the entire family all about the damage she saw at the school as well as damage which she heard about from other students.
Ronnie’s parents testified that Ronnie was at home in bed the morning of November 27, 1976 and had been there since 9:30 the preceding evening. They told of special precautions to keep the car keys away from Ronnie because of his attempt earlier that month to run away from home. No one heard either of the family cars started that night. The high school was 4 to 5 miles from their home and neither believed the appellant had ever walked the distance to the school. Neither of them believed that Ronnie had left their home the night or morning that the vandalism of Acadiana High School took place.
*297 Appellant took the stand in his own defense. He admitted making the confession to Kenneth Hasha, but he insisted that it was not true. He claimed he told Hasha this only to impress him after listening to Hasha brag about his exploits. Hasha continued asking him about the Acadiana vandalism for several days until the appellant was finally charged with the crime. Givens never admitted to anyone but Hasha that he was the perpetrator of the school vandalism. He denied to others anything to do with the crime, and claimed to have been at home in bed from 9:30 Friday evening until noon on Saturday, November 27. He said he had no knowledge of the crime other than what he read in the newspaper or heard from his family and friends.
After receiving the evidence of both parties, the trial judge found the evidence proved beyond a reasonable doubt that Ronnie Givens did commit the offense charged against him. We quote from the trial court’s reasons for judgment:
“As I appreciate the evidence, in this particular ease, there has been proven that vandalism, that is, the offense did in fact take place.
“There has been shown to The Court’s satisfaction, by the evidence, that there was a locational possibility that the offense was committed by the accused juvenile.
“It has been shown that the accused juvenile voluntarily admitted to a fellow inmate in a detention facility, that he had committed the offense.
“The question of the moral character of the recipient of such confidence, I do not really consider at this point to be crucial, as to whether the admission was in fact made; inasmuch as the juvenile himself admitted that he did in fact tell Hasha, that he had committed the offense. This is substantiated by Mr. Givens’, the father of the juvenile, testimony, that Ronnie had admitted that he had told Hasha. “I appreciate the evidence adduced in Court to be to the effect that the mother and father of the juvenile locked the car with the key, resulting in a locked steering mechanism, and that accordingly, it was their view that the steering mechanism and the vehicle itself, could not have been utilized by Ronnie in apparently the cutting of donuts, or transportation from his home to the school.
“I do appreciate the evidence at this point to be that it is possible that Ronnie could have gotten up and slipped out; and had, in fact, done so on other occasions, without their knowledge.
“The apparent degree of detail, and the statements made by the juvenile, Ronnie Givens; the circumstances of his then recanting on the admission, insofar as his denying that he did the damage, to the Police Officers, with his remarks under the question of The Court, that in effect that of course he would not admit to them.
“I am driven to the conclusion that under the state of evidence and the demeanor and the testimony of the witnesses in this courtroom, that I cannot believe and am not convinced by the juvenile’s recantation, and his explanation, for his admission.
“The Court realizes, as the agents of the law enforcement authority have indicated, that there is no independent evidence, directly linking this specific juvenile with proof that he committed the offense. However, The Court believes that the proof of the offense has been established; taken in conjunction with what apparently is unquestionably the voluntary statements by the juvenile to a friend, under conditions of confidence, is sufficient to satisfy the obligation of the State, to prove his guilt beyond a reasonable doubt.
“As much as The Court would like to conjure up a doubt, a fanciful doubt, for the benefit of obviously concerned and dedicated parents, after observing the demeanor of the juvenile, I simply cannot do it.
“I believe that when he told Hasha that he did it, he was speaking the truth. I believe that beyond a reasonable doubt, that he did do it. I therefore found him *298 as having committed the offense, and guilty of having done so.”
Counsel for appellant argues that a review of the record should convince this court that there was insufficient evidence introduced to prove beyond a reasonable doubt that Ronnie Givens committed the crime charged.
Our jurisdiction to hear this appeal is based on Louisiana Constitution of 1974, Article 5, Section 10(A). The scope of our review, as set out in Article 5, Section 10(B), extends to law and facts.
The State has the burden of proving beyond a reasonable doubt that Ronnie Givens did commit the crime as charged. This means that the State’s proof of each and every element of the crime must meet the same standard in this juvenile case as in the criminal trial of an adult.
Essentially, the appellant argues that the trial judge’s evaluation of the credibility of the various witnesses is in error. We find great difficulty in justifying a reevaluation of the credibility of these witnesses. Before the appellate courts were given the authority to hear appeals from juvenile courts, this was a responsibility of the Supreme Court. The same scope of review applicable today also applied in 1948 when the Supreme Court decided State v. Le-Blanc, 213 La. 404, 34 So.2d 905. We quote from the Court’s opinion in that case:
“[6] Under the provisions of Article VII, Section 96, of our Constitution, all appeals from the Juvenile Court of the Parish of Orleans lie on questions of law and fact to this court. Pursuant to this mandate of the Constitution, it is necessary for us to consider the facts in the instant case, always bearing in mind the general principle of law that the accused is presumed to be innocent until his guilt has been established by competent evidence beyond a reasonable doubt.
“In determining whether the guilt of a defendant in any case which is appealable to us from the juvenile court has been established, we have only the record as made up in the lower court and are deprived of the benefit of seeing the witnesses and observing their conduct and demeanor while testifying either for the State or for the defense, and of observing the manner in which they give their testimony. The trial judge sees, hears, and observes all this, and therefore is in a better position to determine the credibility of the witnesses and the weight to be given their testimony—all of which is denied us on appeal.
“For these reasons, when the oral testimony is conflicting, we must give weight to the trial judge’s findings on questions of fact and to his determination of the credibility of the witnesses and the weight to be given their testimony.”
The same restraint must prevail today when the appellate court reviews the decision of a juvenile judge.
Based on the trial judge’s reasonable evaluation of credibility, which he, as the trier of fact, had the right and the duty to make, we find the evidence sufficient to prove beyond a reasonable doubt that Ronnie Givens committed the offense.
For the reasons assigned, we affirm the decision of the trial court.
AFFIRMED.