395 So.2d 912 (1981)
State of Louisiana, Plaintiff-Appellee, in the INTEREST OF John Alvin THOMAS, Defendant-Appellant.
No. 14449.
Court of Appeal of Louisiana, Second Circuit.
February 16, 1981.
Writ Refused April 27, 1981.
*913 Norris & Placke by Allan L. Placke, West Monroe, for defendant-appellant.
Johnny C. Parkerson, Dist. Atty., Lavalle B. Salomon, Asst. Dist. Atty., Monroe, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
By petition filed in the Fourth Judicial District Court, sitting as Juvenile Court for Ouachita Parish, John Alvin Thomas was charged with committing forcible rape upon Douglas Evans on March 18, 1980 in violation of La.R.S. 14:43.1.[1] Counsel appointed to represent the juvenile filed a motion for discovery, to which the State responded, and a motion for a preliminary examination. After the preliminary examination the court concluded that reasonable grounds existed for the continued detention of Thomas.
At the conclusion of an adjudicatory hearing, Thomas, age 15, was adjudicated a delinquent child "in that he did commit Forcible Rape in violation of R.S. 14:43.1." Subsequently, a disposition hearing was held and Thomas was committed to the Louisiana Department of Corrections for a period not to exceed six years or his 21st birthday, with the sentence to run consecutive to any and all prior commitments.
The juvenile has appealed, contending that the trial court judgment should be reversed because (1) the codal article cited in the petition and the judgment defines sexual battery rather than forcible rape and (2) the evidence presented at the trial was insufficient to prove beyond a reasonable doubt that he committed the offense of forcible rape.
As the appellant correctly points out, as of the date of the offense charged in this case La.R.S. 14:43.1 defined the crime of sexual battery.[2] Rather than presenting this issue to the trial court, appellant has raised it for the first time on appeal.
Article 48 of the Louisiana Code of Juvenile Procedure requires that the petition filed in a case of this nature cite the statute alleged to have been violated if an offense is the basis for filing the petition. However, Section B of this article stipulates that any defect in the citation of the statute shall be considered a defect of form.
In the case of State in the Interest of Charles Jordan, 348 So.2d 697 (La.App. 1st Cir. 1977), the appellant claimed that the petition was fatally defective because it failed to properly charge the crime of attempted murder. Rejecting this argument, the court commented:
"Assuming counsel's claim of defectiveness of the charge to be well founded, such circumstances is a matter of no moment under the procedural posture of this *914 case. This matter was fully tried on its merits without objection by counsel as to the sufficiency of the charge. It conclusively appears that counsel understood the charge was attempted murder and conducted his cross-examination of the State's witnesses on this basis. Where an accused goes to trial on a defective information or indictment (in this juvenile proceeding a petition), and a full and fair trial on the merits is held without any surprises or prejudices to the accused, such defect may not be initially asserted on appeal."
In this case there is no contention that counsel for the juvenile was under the impression that his client was charged with sexual battery rather than forcible rape, or that any confusion existed on this point. Furthermore, appellant does not argue that, because of the incorrect citation, he was not prepared to go to trial on the charge of forcible rape. Therefore, it was not shown that the State's mistake in citing the incorrect codal article in connection with the charge of forcible rape resulted in any prejudice to the juvenile. Since the error was harmless, it does not constitute a ground for reversal of the trial court's judgment.
The offense of forcible rape is defined by La.R.S. 14:42.1 as a rape committed:
"... where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."
Article 73 of the Louisiana Code of Juvenile Procedure provides:
"If the petition requests that the child be adjudicated a delinquent, the State shall prove beyond a reasonable doubt that the child committed a delinquent act alleged in the petition."
In juvenile proceedings the scope of review of this court extends to both law and fact. Article 5, Section 10, Louisiana Constitution of 1974; State in Interest of Batiste, 367 So.2d 784 (La.1979). Therefore, in considering appellant's contention that the State did not prove his guilt beyond a reasonable doubt, our mandate is to examine the record to determine whether the trial judge was clearly wrong in his finding that the State had discharged this burden.
The record shows that on the date of the alleged offense both Thomas and Evans, age 15, were inmates of Louisiana Training Institute (LTI) in Monroe and were residents of the same cottage.
Evans testified that on the evening of the day in question he went downstairs to the first floor of his cottage to use the communal bathroom, clothed in a pair of shorts, T-shirt and bathrobe. While he was at the urinal Roosevelt King, Eugene Jones and Thomas entered the bathroom. Someone turned out the lights and grabbed Evans, pulling down his shorts. Evans stated that Thomas then proceeded to force him to have anal intercourse while Jones and King held him. He further asserted that he had told the three to leave him alone, but they refused and he could not get away because Thomas was holding him around his ribs. Evans said that he began crying during the act because Thomas was hurting him. Asked if he was frightened during the incident, Evans replied in the affirmative, explaining that "down at LTI, if you jump on one you have got to fight five or six more. You can't fight but one at a time."
According to Evans, Thomas and his friends fled the bathroom when someone shouted: "Here comes the man, you all bust it now." Evans immediately informed Andrews, an employee of LTI, of the incident, and was taken to the emergency room at E. A. Conway Memorial Hospital for an examination on the rape complaint. The medical report, received in evidence in lieu of the examining physician's testimony, recited that there were no scratches on the victim's body and that a rectal swab for sperm was negative.
Keith Coleman, another LTI inmate, testified that he was present in the bathroom during the incident in question. He stated that Evans was followed into the bathroom by Jones who asked if they were "still going to have sex." Thomas and King then entered and joined Jones in talking to Evans *915 about "having sex." Thomas proceeded to pull down Evans' shorts, Evans pulled them back up and then let them drop. According to Coleman, Evans first refused to "have sex", but then "went on and did it." Coleman said that Thomas had anal intercourse with Evans. When Evans started crying, Coleman left the bathroom.
Thomas denied having anal intercourse with Evans, but admitted that he was in the bathroom during the time in question and saw Jones talking to Evans. He could not hear what they were discussing. He said that someone turned out the lights while this was happening.
In giving his reasons for the adjudication of delinquency, the trial judge stated:
"The court is convinced beyond a reasonable doubt that a sexual act occurred in the bathroom that night and beyond a reasonable doubt that John Thomas was the perpetrator of the act. The Court also is convinced beyond a reasonable doubt and believes as a matter of interpretation of law that the force or the threats or duress which the law requires for forcible rape does not necessarily have to be physical force or injury and certainly the circumstances with which the victim was confronted at that time constitute force."
This determination by the trial judge involved a weighing of the credibility of the witnesses. Obviously he believed Evans and Coleman on the question of whether Thomas had anal intercourse with Evans, and disbelieved Thomas. On the critical issue of whether the intercourse was had without the lawful consent of the victim, the trial judge accepted Evans' testimony.
In State v. LeBlanc, 213 La. 404, 34 So.2d 905 (1948) the Louisiana Supreme Court commented:
"In determining whether the guilt of a defendant in any case which is appealable to us from the juvenile court has been established, we have only the record as made up in the lower court and are deprived of the benefit of seeing the witnesses and observing their conduct and demeanor while testifying either for the State or for the defense, and of observing the manner in which they give their testimony. The trial judge sees, hears, and observes all this, and therefore is in a better position to determine the credibility of the witnesses and the weight to be given their testimonyall of which is denied us on appeal.
"For these reasons, when the oral testimony is conflicting, we must give weight to the trial judge's findings on questions of fact and to his determination of the credibility of the witnesses and the weight to be given their testimony."
Also see State in the Interest of Givens, 350 So.2d 295, 298 (La.App. 3rd Cir. 1977).
Here the victim was using the bathroom in his cottage when three of his fellow inmates, two of whom were larger than he, confronted him with a demand to "have sex." In considering the victim's perception of the futility of resistance, proper weight must be given to the fact of this institutional setting. It was not an instance in which the youth accosted could flee home to his parents. Conversely, Evans faced the prospect of having to continue associating with his accosters on a daily basis. He related that he had experienced prior problems with Thomas and Jones, who would come up behind him in the cottage dayroom and strike him on the back of the head.
On its surface the testimony of Coleman, the State's witness, appeared to contradict that of Evans on the issue of consent. Coleman noted that Evans "did not fight or nothing" and "could have easily gotten away from Thomas." However, Coleman did state that Evans initially refused to "have sex" with the three accosters; that while Thomas was performing the act "King and Jones were over there by Doug"; and that Evans started crying. In essence, Coleman was saying that, after first refusing, Evans appeared to assent to the act of intercourse. Whether this consent was lawful is, of course, beyond the purview of Coleman's competence since he could not be expected to accurately evaluate the reasonableness of Evans' perception of the danger of resisting.
If Thomas held Evans in order to have anal intercourse with him, as the victim *916 testified and as the trial judge chose to believe, this constituted the use of force as set forth in the codal article defining the offense of forcible rape. The presence of Thomas' two friends, in close proximity, amounted, at least implicitly, to a threat of violence if the victim resisted.
After carefully reviewing this record, and according appropriate weight to the trial judge's evaluation of the witnesses' credibility, we do not find that the trial judge was clearly wrong in his determination that the State proved Thomas guilty beyond a reasonable doubt of the offense of forcible rape.
For these reasons, the judgment of the trial court is affirmed.
NOTES
[1] On the date of the alleged offense this article defined the crime of sexual battery, not forcible rape.
[2] Prior to the passage of Act 239 of 1978, this article did in fact define the offense of forcible rape.