694 So.2d 565 (1997)
STATE of Louisiana In the Interest of D.S.
No. 29554-JAK.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*566 Elizabeth Brown, West Monroe, Michael Courteau, Monroe, for Appellant D.S.
Carlton Parhms, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
BROWN, Judge.
This appeal is by 13-year-old DeJuan S. who was adjudicated a delinquent after the trial judge found that he had committed second degree murder of his mother's boyfriend. DeJuan was remanded to the custody of the Dept. of Public Safety and Corrections until his 21st birthday.

Facts
At approximately 10:00 p.m. on March 31, 1996, DeJuan, who was 13 years old, and 21-year-old Eric Hunter, the boyfriend of DeJuan's mother, had a heated argument over a cassette tape which Hunter claimed DeJuan had taken.
The fact that the juvenile shot and killed Hunter during the course of this altercation is undisputed. At trial the issue was whether the killing was justified. Apart from DeJuan, there were two witnesses to the shooting, 16-year-old Craig Hampton and 15-year-old Demetrius Robinson. These witnesses testified that when the fatal shot was fired, the angry but unarmed victim was advancing toward DeJuan. The trial court found that the shooting was unjustified.

Discussion
La.R.S. 14:30.1(A) provides that second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm.
Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary *567 to save his life. La. R.S. 14:20(1); State v. Cotton, 25,490 (La.App. 2d Cir. 3/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1st Cir.1992), rev. denied, 92-2351 (La. 5/12/95), 654 So.2d 346.
A defendant asserting self-defense in a murder case does not have the burden of proof on that issue. The state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Harris, 26,411 (La.App. 2d Cir. 10/26/94), 645 So.2d 224.
In a juvenile delinquency proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult, to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.C. art. 883; State in the Interest of J.W., 597 So.2d 1056 (La.App. 2d Cir.1992). As noted, one of the elements that the state must prove beyond a reasonable doubt is the lack of justification. State v. Harris, supra.
An appellate court's review standard in a criminal proceeding against an adult is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, an appellate court does not reweigh the evidence or assess the credibility of witnesses. We simply determine if a rational juror or judge could have concluded beyond a reasonable doubt that the prerequisite elements were proven.
Juvenile cases are tried by a judge and not a jury. In a juvenile case, we are constitutionally compelled to review both the facts and the law. La. Const. Art. 5, Section 10(A) and (B). Even so, we recognize that the juvenile judge observes the conduct and demeanor of the witnesses and is thus in a far better position to determine credibility and weigh the evidence. For this reason, we afford great deference to the judge's findings on questions fact and to his determination of credibility of the witnesses and the weight to be given their testimony. State v. LeBlanc, 213 La. 404, 34 So.2d 905 (1948); State in the Interest of J.W., supra; State in the Interest of Givens, 350 So.2d 295 (La.App. 3d Cir. 1977).
On appeal, DeJuan admits that he shot and killed Eric Hunter and does not contest his intent to do so. Furthermore, he does not argue that he committed manslaughter rather than second degree murder. Rather, he urges that the trial court erred in finding that he did not act in self-defense. In effect, he challenges the sufficiency of the evidence and its evaluation by the trial court.
The first inquiry under La. R.S. 14:20(1) is whether DeJuan reasonably believed that he was in imminent danger of death or great bodily harm. This question turns upon the unique facts of each case. In cases where the defendant claims self-defense as a justification, the absence of a weapon from the victim's person or immediate reach is often a critical element of the state's proof. See State v. Davis, 28,662 (La.App. 2d Cir. 9/25/96), 680 So.2d 1296. The testimony of the two witnesses in this case concurred that the victim, Eric Hunter, was unarmed and, in fact, had nothing in his hands that could have been used as a weapon. The absence of weapon on the victim, however, is not dispositive of the issue.
La. R.S. 14:20(1) recognizes the additional possibility that a killing may be justified to prevent the infliction of great bodily harm. While weapons may be used to inflict such harm, it is often the case that an opponent who is physically large, powerful or skilled at fighting will inflict great bodily harm upon a weaker adversary.
In this case, the victim, Eric Hunter, was a 21-year-old, 5'11" adult male weighing 165 lbs; DeJuan is a 13-year-old child who at the time of the incident was 5'4" tall and weighed 110-125 lbs. The two were only a few feet apart during their argument. The significant difference in their size, combined with the short distance between them makes it likely that even unarmed, the partially inebriated Hunter could have inflicted great bodily harm upon the adolescent DeJuan. Hunter's blood alcohol level was .08 grams/percent. Nevertheless, there are important factors in this case from which the *568 trial court could have reasonably concluded that a threat of harm was not "imminent."
According to the witnesses, the victim was advancing toward DeJuan when the shooting occurred. Both witnesses testified that the victim's hands were at his side even when he was advancing. Specifically, Hunter never reached toward DeJuan to strike, punch, kick, grab or choke him. Only one of the witnesses reported any action by the victim, other than loud and abusive language, that could have been interpreted as physically aggressive. This action was a quick shoulder motion, which the witness stated that he thought was intended to frighten, not harm.
According to the two witnesses, DeJuan had a "shiny silver" handgun in his hand during the entire encounter. When DeJuan first pulled the trigger, the gun misfired. Hunter backed away briefly when the gun misfired. DeJuan fired a second time and Hunter was shot in the chest. One witness said this was the only shot fired while the other said that DeJuan kept shooting as Hunter ran away. Hunter's sister said that she heard four shots before Hunter entered her house mortally wounded. Hunter was shot once in the chest. The gun was never recovered.
Given the testimony of the two independent witnesses, the trial court could reasonably have concluded that the victim was advancing upon DeJuan to yell at him further, not to attack him. In addition, one of the witnesses testified that Hunter said he wouldn't hit the juvenile because of the difference in their sizes.
The second inquiry under La. R.S. 14:20(1) is whether DeJuan had a reasonable belief that the use of deadly force was necessary to save himself from the threat of great bodily harm or death. In Louisiana, there is no unqualified duty to retreat; however, the possibility of retreat without taking a human life is a factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger posed by another. State v. Ruff, 504 So.2d 72 (La.App. 2d Cir.1987), writs denied, 508 So.2d 64, 65 (La.1987).
In this case, the witnesses stated that DeJuan and Hunter were walking, not running or even walking fast. Hunter was not chasing or trying to catch DeJuan and in the absence of a physical attack, there is no reason that DeJuan could not have simply walked back to his own home.
Other factors which bear upon the reasonableness of DeJuan's belief that deadly force was necessary include the excitement and confusion of the occasion, the possibility of preventing the danger by using force less than killing and the defendant's knowledge of his assailant's dangerous character. See the jury instructions quoted in State v. Harvey, 26,613 (La.App. 2d Cir. 9/25/95), 649 So.2d 783, writs denied, 94-0430, 95-0625 (La. 6/30/95), 657 So.2d 1026, 1028.
The witnesses indicated that DeJuan and the victim were having a "heated" argument; however, the situation did not develop and end quickly but continued for some time, greatly reducing any confusion or excitement. It seems unlikely that the smaller juvenile could have by strength alone prevented an assault upon his person, but as noted previously, no such assault had occurred and nothing suggested that the confrontation got more intense. DeJuan did repeatedly tell Hunter to leave him alone and did display a gun, though without initially pointing it at the victim. The trial court could have reasonably believed that DeJuan was not in immediate danger.
After the state rested, DeJuan testified that Hunter was walking down the street behind him calling him names. Further, DeJuan's testimony that Hunter threatened to have someone else (who was not even present) beat up or hit the juvenile with a bottle was insufficient to make an assault imminent. Finally, DeJuan testified that the victim had never hit him before, even when he had been drinking, and that he only knew of one "argument" that the victim had been involved in with anyone in the past.
Although a strong self-defense argument is made by defense counsel in brief, we can not second guess the trial court's assessment of the evidence and find that the record supports the trial court's conclusion that DeJuan's *569 use of deadly force was without justification.

Conclusion
For the reasons set forth above, we affirm DeJuan's adjudication of delinquency for second degree murder.