542 So.2d 762 (1989)
STATE of Louisiana
v.
Archie CARROLL.
No. 88-KA-1052.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Harry F. Connick, Dist. Atty., Beryl McSmith, Bar No. 8314, Asst. Dist. Atty., New Orleans, for the State.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, C.J., and PLOTKIN and BECKER, JJ.
PLOTKIN, Judge.
Defendant, Archie Carroll, was charged and convicted of manslaughter in a nonjury trial. His single assignment of error is that the evidence was insufficient to justify a conviction of manslaughter.
FACTS
On June 15, 1986, Father's Day, the victim Charles Gibbs, 37 years old, 6'3" tall and weighing 225 pounds, spent the day barhopping with friends. He entered the Ebony Lounge at approximately 5:30 p.m., where he remained until his death at approximately 8:30 p.m. The coroner's report showed him to be legally intoxicated, with a blood alcohol level of .21. His former girlfriend, Jackie Alexander, testified that when he started drinking, he often became aggressive, evidenced by a "fighting mood." She testified that the victim had beaten her on several occasions.
*763 The defendant, Carroll, was 52 years old, 5'5" tall and weighed 172 pounds. The record does not indicate that he had any prior convictions. The defendant and the victim knew each other and had argued over Gibbs' alleged failure to support Alexander's five children, which he had fathered. Carroll was living with Alexander at the time of the incident, had also fathered a child by her and assisted her in the support of Gibbs' children.
Two state witness testified as to the events occurring that night. Henry Williams testified that Gibbs had been in the bar since before dark. He did not see the shooting and was somewhat unsure as to the events that took place. After questioning by the court, he indicated that, although Gibbs had been sitting at the back of the bar, the shooting occurred at the front of the bar, after which Gibbs walked to the back before falling on the ground.
Hilda Cheatham, a barmaid at the Ebony Lounge and a friend of the victim's for over 11 years, testified that she was working behind the bar on the evening of the shooting. Ms. Cheatham stated that she glanced up as the door opened. She saw Gibbs standing at the door talking with someone who was standing just outside. Gibbs waved at this person and then walked a short distance back into the bar to the music box. Cheatham then saw Carroll enter the bar. Thereafter, Cheatham looked away. While Cheatham was not looking, the defendant shot Gibbs. Cheatham testified that she did not hear any argument and did not observe Gibbs raise a bar stool or threaten the defendant. She was emphatic that the victim's arms were at his side when he was shot.
In contrast, the defendant produced considerable evidence, both direct and circumstantial, to contradict these witnesses and justify the homicide. The defendant testified that he had argued with the victim previously over child support. Carroll knew that the victim was significantly younger, larger and stronger and that the victim was aggressive and dangerous when drunk. The defendant testified that he had argued with the victim earlier in the day and left the lounge. When he returned to the lounge and was halfway to the bar, Gibbs, without provocation, came toward him, wielding a bar stool. The defendant retreated toward the door, which he unsuccessfully tried to open in order to escape. As Gibbs continued to approach him, arms overhead, holding the raised bar stool, Carroll pulled out his gun. He aimed and shot at Gibbs' shoulder in order to cause him to drop the stool. The bullet missed the left shoulder, but unfortunately struck Gibbs in the upper part of his left arm pit and entered his chest, causing his death. Carroll testified that he was not the aggressor and that he meant only to disarm Gibbs, as he could retreat no further and had no other options.
Carroll's version of the events had significant independent confirmation. At approximately 11:30 p.m. the same night, after learning of Gibbs' death, and without an attorney to assist him, the defendant surrendered to the police. He signed a written confession which stated as follows:
I went in the barroom and I got me a highball, I didn't know that Charles Gibbs was in there, he was way in the back, and when I seed him, he was coming towards me and he got closer and I got up from the bar. I backed up and kept backing up and I got close to the door and he picked up a chair and I backed to the door and tried to unfasten the door with my left hand, he came up so fast that I couldn't get the door open. [sic]
This voluntary confession, given by the defendant while in police custody, shortly after the event and without the benefit of counsel, supports his assertion that the shooting occurred in self-defense. The confession was consistent with the defendant's trial testimony and supported his truthfulness and credibility.
An independent witness, Elroy Baptiste, a patron who knew none of the parties, testified that he observed Carroll and Gibbs arguing earlier. Mr. Baptiste stated that when Carroll returned to the lounge, Gibbs initiated the events by approaching Carroll, without any apparent reason, with a raised *764 bar stool. Gibbs advanced, Carroll retreated until he reached the door and then fired one shot at Gibbs, just before Gibbs reached him with the raised bar stool.
Immediately following the examination of Baptiste, the court recalled Alexander, who was still sequestered, and cross-examined her on the circumstances that led to Baptiste volunteering his name as a witness. She corroborated his version of events, despite the fact there had been no opportunity for anyone to coach her.
Dr. Gerald Liuzza, a state pathologist and the expert forensic witness who performed the autopsy, testified that the single shot was fired no less than 2½ to 3 feet away from the victim. The coroner did testify on cross-examination that the shot could have been fired as far as 30 feet away. However, the state's other witnesses testified that the defendant and Gibbs were in close proximity when the shot was fired. Moreover, the state's photo exhibit, C-1, clearly shows blood stains at the front of the bar near the front door. This photo exhibit evidences the conclusion that the defendant and Gibbs were within a few feet of each other.
Additionally, Dr. Liuzza testified that the bullet entered the body through the left armpit, offering medical corroboration that at the time of the shooting the victim's arms were raised. Although the coroner could only say that it was "possible" that Gibb's arms were over his head, he did say that Gibb's arms could not have been by his side. This uncontested fact corroborates the defendant's and the independent witness' version of events, indicating that Gibbs was holding a bar stool above his head at the time he was shot. At the same time, the medical evidence discredits the state's witness, Cheatham, who testified that the victim's arms were by his side.
INSUFFICIENCY OF THE EVIDENCE
Defendant's sole assignment of error is that the State produced insufficient credible evidence that he committed manslaughter. Carroll argues that he shot the deceased in self-defense and that the State failed to rebut that defense beyond a reasonable doubt.
The most recent expression by the Louisiana Supreme Court on sufficiency of the evidence reiterated the standard of appellate review.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) State v. Irvine, 535 So.2d 365 (La.1988).
The court held that an appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. Id.
In the case at bar, the defendant argues that he shot his victim in self-defense. A homicide is justifiable "when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." LSA-R.S. 14:20. In State v. Latchie, 535 So.2d 541 (La.App. 3rd Cir.1988), the court found that a homicide is justifiable as self-defense only if the person committing the homicide reasonably believes that he is in danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. The court stated that the defendant who asserts self-defense does not assume any burden of proof on that issue. The Third Circuit held that the state has the affirmative duty of proving beyond a reasonable doubt that the homicide was not perpetuated in self-defense. Thus, the state must show beyond a reasonable doubt that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save his life. On appeal, the relevant inquiry is whether any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense after viewing the evidence *765 in the light most favorable to the prosecution. Id.
Applying this standard in the instant case, this court finds that a rational trier of fact could not find beyond a reasonable doubt that the homicide was not committed in self-defense. The evidence, when viewed in the light most favorable to the prosecution, clearly establishes that the victim was drunk and dangerous and was larger and younger than the defendant. The defendant entered the bar and was aggressively approached, without provocation, by the victim who had a raised bar stool. The defendant retreated to the door but was unable to open it. His actions were taken in order to evade the victim, who continued to approach him with the raised stool. The defendant fired only one shot, reasonably believing that he was in imminent danger of losing his life or receiving great bodily harm. The single shot was aimed at the shoulder, not at a vital organ. The defendant surrendered after the incident and signed a statement which indicated justifiable homicide. The independent witness and the forensic evidence support his contention and discredit the state's single witness.
From this evidence, the state failed to meet its burden of showing beyond a reasonable doubt that the defendant did not reasonably believe he was in imminent danger of losing his life or receiving great bodily harm. Applying the Jackson standard of appellate review for sufficiency of the evidence, we find that the District Court was not justified in rejecting defendant's claim of self-defense.
The judgment is reversed and the defendant is found not guilty and ordered released.
REVERSED AND RENDERED.
SCHOTT, C.J., dissents.
SCHOTT, Chief Judge, dissenting.
Upon a review of the record I am satisfied that when the evidence is considered in the light most favorable to the prosecution it was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the killing was not justified by self-defense.
The State presented two fact witnesses, Hilda Cheatham and Henry Williams. While it is true that Cheatham's testimony that Gibbs' hands were at his side was discredited by the coroner, the trial judge was aware of this but still may have believed from her testimony that Gibbs did not raise the bar stool and advance on the defendant.
While Williams' testimony was quite vague and unclear he did say that Gibbs fell after the shooting at the place he had been sitting toward the back of the bar, some distance from the front door. This testimony was in response to questions by the court and it seemed to influence the court (See pages 88, 90, 91).
While the coroner stated that the shot was fired no less than 2½ feet away from the victim as stated in the majority opinion, the coroner also says that the shot could have been fired as far as 30 feet from the victim. (Page 17)
The coroner said it was only "possible" that the victim's arms were over his head and there was no way of accurately determining the exact position of the arms. (Page 13)
I do not find anything in the record to substantiate the majority opinion's statement that defendant was unable to open the door in order to retreat. The fact is that he was standing in front of the door and the door opened to the outside (Page 115) as do most exterior doors. There is nothing in the record to suggest why he couldn't simply turn the knob and step out.
In the final analysis there were two fact witnesses for the State and two for the defense. The trial court could easily conclude beyond any reasonable doubt that there was plenty of time for the defendant to fire a warning shot and/or step out of the door rather than firing at the chest (he testified arm) of the victim who could have been much farther away than 2½ feet from him. It was defendant's duty to retreat if this was at all possible.
*766 I would affirm the conviction and sentence.