634 So.2d 937 (1994)
STATE of Louisiana, Appellee,
v.
Gary Charles COTTON, Appellant.
No. 25940-KA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
*938 Indigent Defender Office by John M. Lawrence, Alan J. Golden, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Mark A. Perkins, Catherine M. Estopinal, Asst. Dist. Atty., Shreveport, for appellee.
Before NORRIS, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
At the conclusion of his jury trial, the defendant, Gary Charles Cotton, was convicted of manslaughter in the stabbing death of Vertis Hoskey. The defendant was sentenced to serve eight and one-half years at hard labor. For the reasons assigned below, we affirm the conviction and sentence.

FACTS
The defendant, a custodial worker at an elementary school in Shreveport, was infatuated with Janice Baker, a cafeteria worker at the same school. He wanted a romantic relationship with her, while she only wanted to remain friends. On occasion, the defendant would baby-sit for Ms. Baker's two young children, one of whom was the child of the victim, Vertis Hoskey.
On Sunday night, February 9, 1992, Ms. Baker asked the defendant to baby-sit her children while she and a female friend went to a movie. At about 8:30 p.m., Ms. Baker picked up the defendant at his father's house on Gilliam Street and drove him to her house. Then she and her friend left for the movie theater. As they arrived at the theater too late to buy tickets, the women went to a bowling alley to play video games. Thereafter, they went to the Hoskey residence where the 18-year-old victim resided with his mother. En route there, Ms. Baker began experiencing car problems.
Ms. Baker and her friend remained at the Hoskey home until about 1 a.m. on February 10, 1992, playing a game called Taboo with the victim, his brother, and his mother. In view of Ms. Baker's earlier car trouble, the victim secured permission from his mother to use her car, a 1979 Oldsmobile Cutlass, to follow Ms. Baker home.
When Ms. Baker arrived home, the victim came inside the house with her. Speaking to the defendant, he inquired, "Yo, Man. You ready to go?" The defendant responded affirmatively, and the two young men left together. Ms. Baker observed no argument or other hostility between them.
A short time later, Ms. Baker received a telephone call from a man who sounded like the defendant. He informed her that her boy friend had been stabbed. When the victim failed to return to her house, as previously arranged, Ms. Baker became concerned and drove down Gilliam Street looking for him.
Sometime between 1:00 and 1:30 a.m., Lewis Walker, Jr., who lived on Princess Lane, was awakened by a crashing sound. Looking out of his kitchen window, he saw that an automobile had hit a utility pole and a fence before coming to rest in a vacant lot on Gilliam Street. Mr. Walker immediately called 911.
Another neighbor, Albert Horton, who lived on Gilliam Street, was likewise awakened by the crash. As he looked out his window, he saw a black male standing near the automobile and throwing an object at it.
Police and emergency medical technicians responding to Mr. Walker's telephone call found the victim sitting in the driver's seat of his mother's car. He had one stab wound in the upper left side of his chest. The vehicle was stuck in the mud, with the engine still running and the wheels spinning. The rearview mirror was askew, and the rear window had been smashed by a brick which was recovered from the back seat. Although the victim was transported to the LSU Medical Center, where efforts were made to resuscitate him, he died as a result of the stab wound.
Investigating officers discovered a white-handled knife lying in the mud behind the car; it was later identified as a knife carried *939 by the defendant. During a search of the car, the police discovered another knife behind the driver's seat on the back seat floorboard. However, this weapon was still in its sheath. (The victim's mother testified at trial that she carried this knife for protection and that her son was unaware of its presence in her car.)
Ms. Baker arrived at the scene. Apparently through information provided by her, the police developed the defendant as a suspect. At about 7 a.m., officers located him at his father's house and took him into custody.
The defendant was originally arrested on a charge of second degree murder. He was later indicted for manslaughter, in violation of LSA-R.S. 14:31.
Subsequently, the defendant admitted to a friend that he and the victim had gotten into an argument while the victim was driving him home. He claimed that he stabbed the victim because he thought the victim was reaching into his jacket for a knife.
Following a jury trial, the defendant was convicted of manslaughter. Thereafter, the trial court denied the defendant's motion for post-verdict judgment of acquittal. The defendant was sentenced to a term of imprisonment of eight and one-half years at hard labor.
The defendant appealed. He contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. Specifically, he maintains that the evidence was insufficient to convict him of manslaughter because it failed to exclude the reasonable hypothesis of innocence on the basis of self-defense.

LAW
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
For circumstantial evidence to convict, upon assuming every fact to be proved that the evidence tends to prove, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, that rule does not establish a stricter standard of review than the rational juror's reasonable doubt formula, but, instead, provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond reasonable doubt. State v. Combs, supra.
A homicide is justifiable as self-defense only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. LSA-R.S. 14:20(1); State v. Latchie, 535 So.2d 541 (La. App.3d Cir.1988); State v. Carroll, 542 So.2d 762 (La.App. 4th Cir.1989), writ denied, 550 So.2d 625 (La.1989); State v. Jones, 600 So.2d 875 (La.App. 1st Cir.1992).
However, the defendant who asserts self-defense in a homicide case does not assume any burden of proof on that issue. The state has the affirmative duty of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. Thus, the state must show beyond a reasonable doubt that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save his life. State v. Latchie, supra; State v. Carroll, supra.
On appeal, the relevant inquiry is whether any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense after viewing the evidence in the light most favorable to the prosecution. State v. Latchie, supra; State v. Jones, supra.
*940 The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Jones, supra.

DISCUSSION
The only direct evidence as to what transpired between the victim and the defendant in the Hoskey car was the testimony of Maurice Law, the defendant's friend and co-worker. About two weeks after the defendant's arrest, he called Mr. Law and told him that he and the victim had a "little argument" in the car during which the victim reached in his coat pocket. The defendant told Mr. Law that he thought that the victim was reaching for a knife so he stabbed him. In brief, the defendant contends that he had no motive for wanting to kill the victim and, if he had wanted to kill him, he would have certainly stabbed the victim more than once.
This argument ignores the physical evidence which clearly demonstrates that the defendant attempted to stab the victim more than one time. When the Oldsmobile was discovered, the rearview mirror was turned toward the driver's side of the car; there was a diamond-shaped puncture mark on the back of the mirror which had apparently been made by a knife. The victim's mother testified that no such puncture mark was present on the mirror when she drove the car to church earlier that evening.
Furthermore, the record contains evidence of a motive for the defendant to harm the victim. The defendant's romantic overtures had been rebuffed by Ms. Baker. However, she and the victim already had a child together and were in the process of renewing their prior relationship following the victim's breakup with his girl friend. During the telephone call Ms. Baker received after the stabbing, the caller (whom she described as sounding like the defendant) informed her that her boy friend had been stabbed.
The defendant makes much of the presence of a second knife in the car. However, the victim's mother testified that it was her knife, that she had begun carrying it for her own protection only about two months before the offense, and that, to the best of her knowledge, her son did not know it was in the car. Most importantly, when the knife was found, it was still in its sheath.
We also note that the victim was unarmed. The record fails to demonstrate that any knife was found on the victim's person or that he was known to carry such a weapon. Nor does it indicate that he ever made any threats or prior attacks against the defendant.
The evidence likewise fails to show that there was a struggle. The fatal stab wound was the only injury sustained by the victim in the incident with the defendant. (According to the deputy coroner who testified at trial, the other wounds on the victim's body, i.e., missing teeth, resulted from medical efforts to resuscitate him.) When the police located the defendant at his father's house a few hours after the stabbing, the defendant had no bruises or scratches, and his clothes were not in disarray.
Furthermore, the inside door handle on the driver's door was broken. In order to open the driver's door, it was necessary to roll down the window and use the exterior door handle. Consequently, the victim was effectively trapped inside the car without a ready means to exit the car; it seems highly doubtful he would initiate a violent confrontation in the car knowing that he had no way to retreat. It is also highly unlikely that he would engage in an attack while driving the moving vehicle.
From the evidence presented at trial, it is apparent that the defendant and the victim argued (probably about Ms. Baker) while the victim was driving the defendant home. The defendant made at least two attempts to stab the victim, one of which resulted in the fatal wound. The defendant then fled the Hoskey vehicle, pausing long enough to hurl a brick through the rear window. Moments later, he telephoned Ms. Baker to inform her that her boy friend had been stabbed.
Based on the foregoing, we find that the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal. Our review of the evidence, viewed in the light most favorable to the prosecution, demonstrates that it was not reasonable for the defendant to believe he *941 was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save his life. Thus, the record demonstrates that the state carried its burden of proving beyond a reasonable doubt that the defendant was guilty of the offense of manslaughter and that the homicide was not committed in self-defense.
This assignment of error is without merit.

CONCLUSION
The conviction and sentence of the defendant are affirmed.
AFFIRMED.