645 So.2d 224 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Latara HARRIS, Defendant-Appellant.
No. 26,411-KA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1994.
Hunter, Scott, Blue & Johnson, by Robert C. Johnson, Monroe, for defendant/appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Jerry L. Jones, Dist. Atty., Charles L. Cook, J. Michael Ruddick, Asst. Dist. Attys., Monroe, for plaintiff/appellee.
Before NORRIS, LINDSAY and VICTORY, JJ.
VICTORY, Judge.
Latara F. Harris, originally indicted for second degree murder, appeals her jury conviction for manslaughter. For the following *225 reasons, we reverse the conviction and remand for further proceedings.

FACTS
On February 2, 1993, the defendant, Latara Harris, spent the day with her cousin, Laquana Gardner and friends, Makimberly Lowery and Leketha White in and around Harris's friends' homes on the outskirts of Monroe in Ouachita Parish. According to the defendant, she fell asleep later in the evening on a couch in Gardner's house. When she awoke, she wanted to return to her apartment across town. Not having any transportation, she walked to a local bar to find someone to give her a ride. There, the boyfriend of a friend agreed to take her home for five dollars.
Harris, who was the sole eyewitness to the subsequent shooting and whose version of the event was the only one given at trial (and related here), testified that she walked to the house of Isaac Graham, Jr., a 73-year-old man, to inquire about borrowing some money. Through Gardner and Lowery, Harris was acquainted with Graham and often spent time visiting in his home. Graham came to the door fully dressed and armed with a .25 pistol. When Harris identified herself, he allowed her inside where she explained her situation.
Graham left the room for a few minutes and returned wearing an undershirt and boxer shorts. Still armed with the pistol he gave Harris a $5 bill, but began to complain that he was tired of defendant and her friends taking advantage of him and demanded sex. The defendant refused and offered to return the money, but Graham insisted and grabbed Harris from behind as she attempted to walk out the door. When Graham refused her pleas to be released, Harris testified that she hit Graham in the stomach and he dropped the gun. They both struggled for the gun with Harris gaining possession of it. As she again attempted to leave, Graham grabbed her again and asked her to give the gun back to him. When Graham declined her offer to toss the gun back in the house after leaving, Harris shot him once. Graham maintained his grasp, and Harris explained that she closed her eyes and shot him six more times.
After the shooting, Harris was seen by a neighbor leaving Graham's house. She was subsequently arrested at Gardner's home and indicted for second degree murder. Defendant was tried by jury in August 1993 and found guilty of manslaughter. Thereafter, the court sentenced her to 40 years at hard labor.
The defendant appeals her conviction, asserting nine assignments of error, including a contention that the trial court erred in refusing to fully instruct the jury regarding the law on justifiable homicide. Because we find that the trial court committed reversible error in refusing to give the requested jury charge, we pretermit a discussion of defendant's remaining assignments of error excepting the issue of sufficiency of the evidence.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992).
The criteria for evaluating sufficiency of evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, supra. That standard, now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. *226 Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
When circumstantial evidence is used to prove the commission of the offense, every reasonable hypothesis of innocence must be excluded as to that element of the crime which the circumstantial evidence tends to prove. LSA-R.S. 15:438. However, this rule does not establish a standard of appellate review separate from that set out in Jackson. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. State v. Taylor, 621 So.2d 141, 147-48 (La.App.2d Cir.1993).
A homicide is justifiable as self-defense only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. LSA-R.S. 14:20(1); State v. Cotton, 25,940 (La.App.2d Cir. 3/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App.1st Cir.1992); State v. Carroll, 542 So.2d 762 (La.App.4th Cir.1989), writ denied, 550 So.2d 625 (La.1989); State v. Latchie, 535 So.2d 541 (La.App.3d Cir. 1988).
However, the defendant who asserts self-defense in a homicide case does not assume any burden of proof on that issue. The state has the affirmative duty of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. Thus, the state must show beyond a reasonable doubt that the defendant did not reasonably believe that she was in imminent danger of losing her life or receiving great bodily harm and that the killing was necessary to save her life. State v. Cotton, supra; State v. Latchie, supra; State v. Carroll, supra.
The relevant inquiry on appeal is whether any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense after viewing the evidence in the light most favorable to the prosecution. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Cotton, supra; State v. Jones, supra.
The evidence viewed in the light most favorable to the prosecution supports the finding that the jury chose not to believe defendant's version of the shooting and rejected the notion that her actions were taken in self-defense. Earlier on the day of the shooting, Harris visited with Gardner, Lowery and Leketha White in front of White's home. During that conversation, the women discussed the possibility of robbing the victim. Although Harris, Gardner and Lowery admitted the content of this discussion at trial, all asserted that the women were merely joking. White, however, maintained that only Harris spoke of a plan to assault Graham and specifically stated her intent to rob and kill him. Leketha White's mother, Brenda White, testified that she overheard Harris, Gardner and Lowery discuss the plan and Harris's statement that she intended to kill Graham.
Defendant's actions following the shooting also belie her claim of self-defense. Terrence Long, who lived across the street from Graham, heard the shots and saw Harris flee the scene. When questioned by the police, defendant denied being at the victim's house and any involvement in the shooting. Following her arrest, defendant telephoned her brother, Avery Harris, from jail. She told him that she had hidden the gun under a hot water heater at Gardner's house and instructed him to get the gun and dispose of it.
Based on the foregoing, we find that the trial court did not err in denying defendant's motion for post-verdict judgment of acquittal. Our review of the evidence, viewed in the light most favorable to the prosecution, demonstrates that the jury chose not to believe Harris's claim that she shot the victim in self-defense. Thus, the record demonstrates that the state proved beyond a reasonable doubt that the homicide was not committed in self-defense.

JURY INSTRUCTIONS
The defendant argues that the trial court erred in refusing to include in its jury *227 instruction that portion of the definition of justifiable homicide contained in LSA-R.S. 14:20(2). The trial court instructed the jury that a homicide is justifiable:
When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20(1).
LSA-R.S. 14:20(2) provides further that a homicide is justifiable:
When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
The trial court refused to include the definition of justifiable homicide contained in Paragraph (2), finding that the section was inapplicable as it contemplated that the intended felony be directed to one other than the defendant. We find that the trial court erred in refusing to give the requested instruction.
LSA-C.Cr.P. Art. 807 provides in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
LSA-C.Cr.P. Art. 802 provides that the court shall charge the jury as to the law applicable to the case. This article obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978).
The trial court's determination that LSA-R.S. 14:20(2) applies only in a situation where the killer is a third party to a violent felony is erroneous and has been implicitly rejected in State v. Waxler, 569 So.2d 29, 30 (La.App. 4th Cir.1990); State v. Stratton, 521 So.2d 842, 845 (La.App.2d Cir.1988); State v. Guillot, 470 So.2d 360, 362 (La.App. 5th Cir.1985), writ denied, 476 So.2d 347 (La.1985); State v. Deville, 451 So.2d 129, 133 (La.App.3d Cir.1984). In all of these cases, LSA-R.S. 14:20(2) has been applied where the killer was also the potential victim of a violent felony. The requested instruction was correct and pertinent and the trial court should have included the instruction in its charge to the jury.
The omission of a pertinent instruction is nonetheless subject to the harmless error analysis. The question is whether the jury verdict was surely unattributable to the error. Sullivan v. Louisiana, ___ U.S. ___, ___, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). When this standard of review is applied to the facts in this case, we find that the trial court's error in failing to give the relevant jury instruction was not harmless, but rather was prejudicial and requires reversal.
The trial court's determination that LSA-R.S. 14:20(2) applied only in a three-party situation deprived the jury of a more complete explanation of the relevant law. There was evidence in this case which tended to support defendant's version of the events. Harris, Gardner, Lowery, Leketha White and Brenda White all testified that the victim was fond of young women and frequently entertained them in his home, lent them money and allowed them to use his car. Gardner testified that Lowery admitted having sexual relations with Graham and intimated that the other women, although denied by them, did so also. Terrence Long testified that he often saw Gardner and Lowery driving around in the victim's car. On the day of the shooting, following the conversation in which the women either planned or joked about robbing the victim, Harris, Gardner and Lowery visited with Graham in his home and had lunch with him. This evidence would tend to support the theory that Graham *228 tired of the women's exploitations and decided to force Harris into having sexual relations with him in exchange for the money she requested.
The expanded definition of justifiable homicide contained in the omitted instruction may have allowed the jury to envision a scenario of events more fitting defendant's account of the shooting. Due to the incomplete definition of justifiable homicide, the jury was deprived of all of the applicable law relevant to a determination whether justifiable homicide was committed in this case. We cannot say this failure to fully apprise the jury of the relevant law was harmless error.
Due to the trial court's failure to instruct the jury on the applicable law on justifiable homicide, the defendant was prejudiced and her conviction must therefore be reversed. However, double jeopardy does not preclude the state from retrying a defendant whose conviction is set aside because of prejudicial error. State v. Mayeux, 498 So.2d 701 (La.1986).

DECREE
For the foregoing reasons, the defendant's conviction and sentence are reversed. The case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.