787 So.2d 516 (2001)
STATE of Louisiana
v.
Sarah CHARLES.
No. 2000-1611.
Court of Appeal of Louisiana, Third Circuit.
May 9, 2001.
*517 Chester R. Cedars, St. Martinville, LA, Counsel for State of Louisiana.
Margareta M. Lahme, Lafayette, LA, Counsel for Defendant/Appellant Sarah Charles.
Court composed of DOUCET, C.J., and THIBODEAUX and SULLIVAN, Judges.
THIBODEAUX, Judge.
The Defendant, Sarah Marie Charles, appeals her conviction and sentence for the responsive verdict of attempted manslaughter. She was initially charged with attempted second degree murder. She was sentenced to eighteen years at hard labor. All but eight years were suspended.
We affirm.
We shall consider whether:
(1) the evidence was insufficient to establish the elements of the crime;
(2) the trial court erred when it instructed the jury that the State, not the Defendant, had the burden of proving she acted in self-defense; and,
(3) the trial court imposed an excessive sentence.

*518 INSUFFICIENCY OF THE EVIDENCE

Defendant contends there was insufficient evidence presented at trial to prove that she attempted to kill the victim, particularly in light of the fact that her actions were motivated by the necessity for self-defense.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982).
State v. Addison, 97-1186 (La.App. 3 Cir. 3/6/98); 717 So.2d 648, writ denied, 98-938 (La.9/4/98); 723 So.2d 955.
Homicide is justified "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La.R.S. 14:20.
According to La.R.S. 14:31 A(1), manslaughter is:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.
The elements of second degree murder are the killing of a human being with the specific intent to kill or to cause great bodily harm. La.R.S. 14:30.1. However, when an attempt is alleged and the charge is second degree murder, it is required that the defendant have the specific intent to kill a human being and specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequence to follow his act or failure to act. La.R.S. 14:10; State v. Anderson, 98-492 (La.App. 3 Cir. 10/28/98); 721 So.2d 1006, writ denied, 98-2976 (La.3/19/99); 739 So.2d 781.
Attempt, according to La.R.S. 14:27, is:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
* * *
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
The victim, Elanor Chiasson, her mother, Patricia Chiasson, her two sisters, Kathy Livings and Lee Ann Noel, and Ms. Noel's husband, Jason Noel, arrived at Club L A, located on Coteau Rodiare Highway in St. Martin Parish, between 9:30 and 10:00 p.m. for a Christmas party. At closing time, approximately 1:30 a.m., Defendant threw a beer can which struck Kathy Livings in the face. Ms. Livings attempted to hit Defendant, but was restrained by others. The Defendant immediately left the club.
*519 The victim testified she was dancing with her sister, Ms. Noel, when she noticed a confrontation between Defendant and Ms. Livings, but she did not become involved. She stated she did not see the Defendant leave the club. The victim testified that she left the club about four to five minutes after the altercation between the two because it was time to leave. As she was leaving, she saw the Defendant standing at the bottom of a narrow exit/entrance ramp, on the other side of the ramp's rails, and asked her, "What's happened?" The Defendant rushed up the ramp and stabbed her. The victim's testimony is largely supported by Cynthia Williams.
Cynthia Williams is a cousin of the Defendant. Ms. Williams testified that she was at the club by herself on the evening of the stabbing. She had no knowledge of the incident inside. When she left the club at closing time she was immediately behind the victim. She stated she was so close to the victim that she would have bumped into the victim had the victim suddenly stopped. Ms. Williams testified that she first saw Defendant at her car near the bottom of the entrance/exit ramp. She then watched the Defendant come up the ramp and stab the victim without any words being exchanged. She does not recall seeing anyone else outside at the time.
The Defendant told the arresting officer that three girls, including Kathy Livings, had attacked her outside the club and she had to pull the knife to protect herself.
The Defendant was originally charged with attempted second degree murder. She was found guilty of the responsive verdict of attempted manslaughter. There was no evidence or testimony to support the elements of sudden passion or heat of blood. It is the defendant's burden to prove by a preponderance of the evidence that there are such mitigating factors as "heat of blood" or "sudden passion." State v. Baldwin, 96-1660 (La.12/12/97); 705 So.2d 1076. "Heat of blood" or "sudden passion" is defined by case law as an act committed in response to such provocation sufficient to deprive an average person of his self-control and cool reflection. State v. Miller, 98-642 (La. App. 3 Cir. 10/28/98); 720 So.2d 829. In this case, the only provocation for Defendant's action was her earlier argument with Kathy Livings. However, Kathy Livings is not who the Defendant stabbed. Case law requires that there be some act or series of acts by the victim sufficient to deprive a reasonable person of cool reflection. State v. Jack, 596 So.2d 323 (La.App. 3 Cir.1992), writ denied, 92-1052 (La.6/5/92); 600 So.2d 611. Further, an argument alone will not be a sufficient provocation in order to reduce a murder charge to manslaughter. State v. Miller, 98-642 (La.App. 3 Cir. 10/28/98); 720 So.2d 829, citing State v. Gauthier, 546 So.2d 652 (La.App. 4 Cir.1989).
Defendant offered no evidence sufficient to support the mitigating circumstances of sudden passion or heat of blood. Thus, there was insufficient evidence for the jury to return the responsive verdict of attempted manslaughter. However, the verdict of attempted manslaughter may have reflected the jury's right to compromise between the verdicts of guilty of attempted second degree murder and not guilty. In State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge.
There was sufficient evidence for the trier of fact to have found that the State proved beyond a reasonable doubt all the elements necessary to support the charge *520 of attempted second degree murder; therefore, a responsive verdict of attempted manslaughter was proper.
Defendant's specific intent may be inferred from the circumstances. State v. Tilley, 99-0569 (La.7/6/00); 767 So.2d 6. It was undisputed at trial that Defendant was the aggressor in the altercation with the victim's sister. It was undisputed that Defendant left the club in a rush to obtain a weapon and started back up the ramp toward the club with the knife. It was undisputed that the Defendant stabbed the victim. The victim was stabbed four times, once in the chest, a long slash starting above the left eye and ending on the right cheek, and two stab wounds over the right eye. The emergency room doctor who attended to the victim's injuries testified that she bled significantly and most assuredly would have died had she not received treatment. After viewing the evidence in the light most favorable to the prosecution, there was ample evidence for any rational trier of fact to infer Defendant's intent was to kill the victim.
However, the Defendant contends her actions were motivated by the need to defend herself. Under this defense, in an act that did not result in a death, there is a twofold inquiry: (1) from the facts presented, was the use of force reasonable under the circumstances; and, (2) a subjective inquiry into whether the force was apparently necessary. State v. Perkins, 527 So.2d 48 (La.App. 3 Cir.1988). Further, it is the Defendant's burden in a non-homicide to establish by a preponderance of the evidence that self-defense was justified. Anderson, 721 So.2d 1006.
The defense presented two witnesses to support Defendant's theory of self-defense. First, Howard Patt, manager of the club, testified that although he did not know about the incident inside the club, he knew there was a problem by the manner in which Defendant hurried out of the club. He went outside and observed the Defendant walking up the ramp toward the club with a closed knife in her hand. He stated that he met Defendant half way up the ramp and had convinced her to give him the knife, but just as she was about to place the knife into his hand, the victim came down the ramp and began swinging at Defendant. According to Mr. Patt, the victim was being restrained by an unidentified person known to him only as "Shorty."
Mr. Patt, on direct examination by the defense, stated that the victim began swinging at the Defendant while he was trying to keep them apart. On re-direct, he testified that if he was in Defendant's shoes, he would have been fearful because he would have been outnumbered. However, Mr. Patt also testified on cross examination that only himself, "Shorty," the victim, and the Defendant were outside the club at the time of the stabbing.
The Defense's second witness, Christine Edmond, testified that shortly after Ms. Livings arrived at the club, Ms. Livings said she "was gonna fight with Sarah." Ms. Edmond left the club before the confrontation between Defendant and Ms. Livings took place. There was no testimony whether this conversation was transmitted to Defendant.
Although the Defendant told the arresting officer that three girls, including Kathy Livings, had attacked her outside the club and she had to pull the knife to protect herself, there was no other testimony or evidence to corroborate hers or Mr. Patt's testimony that the use of a knife was reasonable or necessary.
Notably, there was no testimony that the victim, or anyone else other than the Defendant, had a weapon. There was no testimony that any threatening statements *521 were made to Defendant by anyone. There was no testimony that any other members of the victim's family were outside at the time of the stabbing nor was there any testimony there was anything preventing the Defendant from getting into her car and leaving the club.
In fact, on cross examination, Mr. Patt admitted that, even though the victim confronted Defendant, it was not necessary "for the defendant to stab this lady to prevent any sort of confrontation." Mr. Patt also admitted there was nothing or no one preventing the Defendant from getting in her car and leaving the scene.
Contradicting Mr. Patt's testimony concerning the stabbing is the testimony of the victim and Cynthia Williams. In fact, neither witness even recalled seeing Mr. Patt outside the club at the time of the incident. Because there was contradictory testimony, Defendant's self-defense claim hinged on a credibility determination. Citing State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793, this court held in State v. Bernard, 98-994 (La.App. 3 Cir. 2/3/99); 734 So.2d 687, "that a jury may rely on a single witness's testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence." Similar to the instant case where there was conflicting testimony, this court stated in State v. Taylor, 96-1043 (La.App. 3 Cir. 2/5/97); 688 So.2d 1262:
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La. 1987).
A fact-finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988).
Id. at 1267.
In Addison, 717 So.2d 648, this court reversed the trial court's finding of no self-defense when evidence revealed that when the victim battered the defendant's son, the defendant hit the victim to get him to stop. Shortly thereafter, the victim stabbed the defendant in the arm. Whereupon, the defendant grabbed a knife and stabbed the victim back, inflicting a fatal wound. In Addison, the defendant did not provoke the confrontation and used the weapon that was being used against her. In State v. Carroll, 542 So.2d 762 (La.App. 4 Cir.), writ denied, 550 So.2d 625(La.1989), the defendant and the victim had fought at a bar. The victim went after the defendant with a raised bar stool. To defend himself, the defendant shot the victim. The court found the defendant's actions justified. In State v. Perkins, 527 So.2d 48 (La.App. 3 Cir.1988), this court upheld the trial court's finding of no justification of self-defense when the defendant stabbed the victim twice. In Perkins, the defendant and the victim had an ongoing confrontation over a long period of time. *522 At one point, the victim, who was much larger than the defendant, slapped a pipe out of the defendant's mouth, whereupon the defendant grabbed a knife and stabbed him. This court stated:
To stab a person twice (once in the heart) in retaliation to that person's slapping a pipe out of one's mouth is certainly not a reasonable action under the circumstances. As to defendant's subject state of mind, he alleges that he feared Goudeaux and remembered the time that Goudeaux had allegedly beaten him up on a previous occasion. To say, however, that defendant subjectively believed that he needed to grab the knife and stab Goudeaux in the heart and abdomen with it in order to protect himself from Goudeaux's use of force against him, has no semblance of credibility.
Id. at 50.
Even if Mr. Patt's version of the facts had been believed, the evidence would have still been insufficient to prove self-defense. The victim was not armed and the Defendant was not outnumbered. From the Defendant's perspective, there was a man standing between her and the victim and, according to Mr. Patt's testimony, someone was restraining the victim. The jury's guilty verdict revealed that the jurors did not accept Defendant's assertion that she was in a position where the use of a weapon was necessary.
Viewed in the light most favorable to the prosecution, the evidence presented at trial was insufficient to support Defendant's theory of self-defense. She did not sustain her burden of establishing by a preponderance of the evidence, that any force, let alone the use of a weapon, was reasonable and necessary under the circumstances.

JURY INSTRUCTION ON SELF DEFENSE
Defendant contends that the trial court erred when it instructed the jury as to who had the burden of proving whether the Defendant acted in self-defense. The judge instructed the jury as follows:
Although the State must prove beyond a reasonable doubt each and every element of the crime which a person is charged the defendant has the burden of proof by a preponderance of the evidence as regards a claim of self-defense. That is, the defendant must prove more probable than not that she acted in self-defense.
Defendant alleges that the State had the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense. However, this court has consistently held that, in non-homicide cases, such as this one, the burden is upon a defendant to show by a preponderance of the evidence that the use of force or violence was "committed for the purpose of preventing a forcible offense against the person ... provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." Anderson, 721 So.2d at 1010, quoting La. R.S. 14:19; State v. Joubert, 97-1093 (La. App. 3 Cir. 2/4/98); 705 So.2d 1295; State v. Hall, 606 So.2d 972 (La.App. 3 Cir.1992), writ denied, 93-0051 (La.11/11/94); 644 So.2d 385; Perkins, 527 So.2d 48.
When a defendant in a homicide case claims self-defense, the state has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense, State v. Garcia, 483 So.2d 953 (La.1986). In non-homicide cases, such as this, the defendant must carry the burden of proving self-defense by a preponderance of the evidence. State v. Barnes, 491 So.2d 42 (La.App. 5 *523 Cir.1986); State v. Mason, 499 So.2d 551 (La.App. 2 Cir.1986).
Joubert, 705 So.2d at 1298, quoting State v. Hall, 606 So.2d at 973-74. Thus, the trial court did not err when it gave the jury instruction placing the burden of proof upon the Defendant to show that she acted in self-defense by a preponderance of the evidence.

EXCESSIVE SENTENCE
Defendant asserts that the trial court erred when it imposed an excessive sentence on Defendant in light of the fact that this was her first felony conviction. She also alleges that at the sentencing hearing, and for the purpose of imposing the sentence, the State falsified testimony regarding a prior arrest and conviction. However, a search of the record reveals that Defendant did not make or file an oral or a written motion for reconsideration of the sentence. Thus, pursuant to La.Code Crim.P. art. 881.1(D), the Defendant is precluded from objecting to the sentence imposed. See Joubert, 705 So.2d 1295.
La.Code Crim.P. art. 881.1(D) provides: Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Therefore, this assignment of error should not be reviewed.

CONCLUSION
For the foregoing reasons, the Defendant's conviction and sentence are upheld.
AFFIRMED.