|,WILLIAMS, J.
The defendant, Kenneth D. Hale, was charged with aggravated rape, a violation of LSA-R.S. 14:42. After a jury trial, the defendant was convicted as charged. He was sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On August 27, 1998, K.W., the juvenile victim in this case, was taken to Dr. Sow-ma Fakhre with complaints of stomach pains and missed periods. K.W. was thirteen years old at the time of the offense, and she suffers from Down’s Syndrome. Dr. Fakhre opined that K.W. was in the second to third trimester of her pregnancy. Dr. Fakhre contacted the sheriffs office and Child Protection Services. Because K.W. has Down’s Syndrome, is moderately retarded, and has an I.Q. of about 38 to 47, she was unable to give Dr. Fakhre or the authorities any information as to who was responsible for her pregnancy. The authorities realized that they had to wait until the baby was born to conduct DNA testing on the baby, K.W. and the possible suspects. At that time, K.W. lived with her father and mother, an older sister, two younger brothers and the defendant, her twenty-one-year-old half-brother.
K.W. gave birth to a child on October 12, 1998. After the child’s birth, the West Carroll Sheriffs Office arranged DNA testing of K.W., the newborn child, KW.’s grandfather, her stepfather, and the defendant. The testing, by the Northwest Louisiana Crime Lab, excluded the grandfather and stepfather, but determined with a 99.99% probability that the defendant was the father of the child.
|2On March 2, 1998, the defendant was arrested on an outstanding warrant for issuing worthless checks and taken to the West Carroll Parish Sheriffs Office. There he was given his Miranda rights, and questioned about the possible rape charge. The defendant gave an oral and a recorded statement wherein he admitted that he came home one night after a break-up with his girlfriend, got into bed with K.W., was “fumbling around” with her and had sexual intercourse with her. The defendant blamed his consumption of alcohol for the incident.
At trial, the state adduced evidence to show that K.W. was thirteen years old at the time of the incident, she had a functional I.Q. of 38 to 47 and she was unable to understand or explain how she got pregnant. The child did not testify.[1] Further state’s evidence established that the DNA testing results showed the defendant to be the father of KW.’s child, with a 99.99% probability. The state also presented the defendant’s oral statements and recorded confession where he admitted that he had had sexual intercourse with K.W.
The defendant testified at trial. In his testimony, he denied ever having sexual relations with K.W. and explained that his *1276 statements recorded by the arresting officers were the result of their threats of possible lethal injection if he did not admit to the act. Family members also testified that they did not think the defendant had had sexual relations with K.W.
The jury unanimously found the defendant guilty of aggravated rape. At sentencing, the defendant again denied having sexual relations with K.W. 1¡¡The trial court sentenced the defendant to serve life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
DISCUSSION
On appeal, the defendant contends the evidence at trial was insufficient to support a conviction of aggravated rape. The state, on the other hand, argues that it produced more than sufficient evidence to support a conviction of aggravated rape, and the jury made a proper credibility determination.
As stated above, the defendant was convicted of aggravated rape, pursuant to LSA R.S. 14:42(A)(6). That statute states in pertinent part:
§ 42. Aggravated rape
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * *
(6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance.
In the present case, the state alleged the child, K.W., suffered from a mental infirmity. LSA-R.S. 14:42(C)(2), defines “mental infirmity”:
C. For purposes of this Section, the following words have the following meanings:
[[Image here]]
(2) “Mental infirmity” means a person with an intelligence quotient of seventy or lower.
A claim of insufficient evidence is properly raised by a motion for a post-verdict judgment of acquittal. LSA-C.Cr.P. art. 821. However, this court will review a sufficiency of the evidence issue even when it is raised solely by an assignment of error. State v. Salter, 31,633 (La.App.2d Cir. 2/24/99), 733 So.2d 58, writ denied, 99-0990 (La.9/24/99), 747 So.2d 1114; State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, initially enunciated in Jackson, and now legislatively embodied in LSA C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Salter, supra; State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder’s determination of guilt. State v. Rhodes, 29,207 (La.App.2d *1277 Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980; State v. Cotton, supra.
At trial, the state adduced evidence that someone had had sex with K.W., she was a thirteen-year-old child who was suffering from Downs Syndrome, and she has a functional I.Q. of 38 to 47. The DNA testing of adult males with the most contact with the child established a 99.99% probability that the defendant was the father of the baby. Testimony by the arresting officers showed that when questioned, the defendant admitted to 1 Bhaving sex with K.W. while he was intoxicated. The record supports the jury’s conclusion that the defendant had unconsensual sex with his mentally handicapped half-sister. There was no internal contradiction or irreconcilable conflict with the state’s evidence.
The only conflict in the testimony was the defendant’s assertion at trial that he had never had sexual relations with K.W. In cases involving a defendant’s claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. In this case, the state presented the results of the DNA testing and the defendant’s confession to negate any reasonable possibility that another person had committed the crime.
In enacting LSA-R.S. 14:42(A)(6), the legislature clearly wanted to provide the mentally and physically infirm special protection from rape. Thus, a mentally handicapped victim, such as K.W., is prevented from resisting the rape by virtue of her mental infirmity. The victim in this case clearly meets the mental disability standard for aggravated rape, and that disability would have prevented her from resisting in accord with the statute.
The jury was presented testimony of the degree of the victim’s mental retardation, her complete inability to understand sex, to know who had had sex with her, or to know that she had given birth to a child. Consequently, we conclude that the jury had sufficient evidence to conclude that the defendant was guilty beyond a reasonable doubt of the crime of aggravated rape.
The assigned error lacks merit.
| ¿Error Patent
We note from our review of the record that the trial court failed to inform the defendant of the prescriptive period for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. The defendant should have been advised by the trial court, and is now advised by this court’s opinion, that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. art. 914 or 922. The Louisiana Supreme Court has held that LSA-C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitation period for fifing an application for post-conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The record indicates that the child was in the courtroom during the trial.