|,GASKINS, J.
The defendant, Charles 0. Poland, appeals his conviction and sentence for manslaughter. We affirm, for the following reasons.
FACTS
On the evening of August 6, 1997, the defendant summoned authorities from the Franklin Parish Sheriffs Office to his residence. When Deputy Larry Crum arrived at the residence at 8:34 p.m., he observed the body of a white male lying in the yard in front of a pickup truck. The 59-year-old victim, James Howard Poland, had died as a result of a single gunshot wound to the chest. The victim was the defendant’s cousin.
When Deputy Crum arrived, the defendant approached him and stated that the victim “pulled a knife on me and I had to shoot him.” According to Deputy Crum, a knife was found in the victim’s left hand with the blade turned backward. Deputy Crum retrieved the gun used in this offense from the defendant’s vehicle. The deputy stated that the defendant had been drinking, but was coherent.
Deputy Robert Posey and Sheriff Steve Pylant arrived at the scene later. Deputy Posey photographed the scene and gathered evidence. He testified that the victim had a brown knife in his left hand and also had burned cigarette paper attached to a finger of his left hand. A white knife was found in the victim’s right front pocket, but that weapon was not exposed. Also found near the body were a silver can, a cigarette butt, a lighter and a beer can. The defendant appeared calm and settled. He was read his rights and then stated, “He came at me with an attitude and he hit me twice with a knife and I shot him in self defense. I want a lawyer.”
The defendant was charged by grand jury indictment with second degree murder. The defendant was tried by jury on November 16 and 17, 1998. At trial, Dr. Steven Hayne, a forensic pathologist who performed the autopsy on the victim, | ¿testified that the victim died of a single gunshot wound to the left chest. He observed numerous contusions and abrasions *1017 on the body consistent with falling after being shot. He stated that none of the marks were indicative of a struggle with another person. He also observed a burn mark on the surface of the right forearm that occurred at or about the time of death, consistent with a cigarette. He noted that the victim had significant nicotine stains on two fingers of his left hand. The doctor stated that the staining would have taken a long time to develop. It was established that the victim was right-handed. According to Dr. Hayne, the victim was standing up and the fatal shot was fired from slightly above the victim. Testimony showed that the defendant was slightly taller than the victim. Dr. Hayne testified that the victim would have been capable of meaningful movement for about 20-25 seconds after being shot. He would have then gone into irreversible shock in one to one and one-half minutes. Death would have occurred approximately three to five minutes after being shot.
An acquaintance of the defendant, Dale Ingram, testified that he was at the defendant’s residence on the evening of August 6, 1997, visiting with the defendant and another man, George Allen Price. The witness was present when the victim arrived. Mr. Ingram stated that the victim did not act belligerent upon his arrival. There were no witnesses to the shooting. Mr. Ingram and Mr. Price left before the offense occurred.
At trial, the prosecution sought to introduce the defendant’s testimony given to the grand jury to show that the defendant made prior inconsistent statements. Even though the defendant chose not to testify at trial, the state argued that the defendant had been informed of his Miranda rights prior to giving his testimony to the grand jury and therefore, the testimony was admissible at trial to show that the grand jury testimony was not consistent with the statements the defendant gave to [Jaw enforcement officials immediately after the shooting. Over the defendant’s strenuous objection, the trial court allowed a tape of the defendant’s testimony to the grand jury to be played to the jury at trial.
Although the defendant was originally charged with second degree murder, after a short deliberation, the jury convicted him of manslaughter. The defendant appeared before the court for sentencing on January 12, 1999. The trial court reviewed the defendant’s background and criminal history. The court observed that the defendant had no remorse for the present offense and most of the letters the court received expressed fear should the defendant ever be released from custody. The court found that there was an undue risk that the defendant would commit another offense, that he was in need of correctional treatment and that a lesser sentence than that imposed would deprecate the seriousness of the offense. The court considered that the defendant did not have a prior felony record, but had an extensive record of misdemeanors including driving while intoxicated and simple battery. The court sentenced the defendant to forty years at hard labor with credit for time served. The defendant timely filed a motion to reconsider sentence, which the trial court denied. The defendant then appealed his conviction and sentence. The defendant objects that there was insufficient evidence upon which to base his conviction. He also complains that the trial court erred in admitting his grand jury testimony. The defendant argues that the trial court erred in imposing an excessive sentence.
SUFFICIENCY OF THE EVIDENCE
The defendant contends that his testimony was consistent with the physical evidence in this matter: a knife in the victim’s left hand, a beer can found near the victim’s body and abrasions on the victim’s body from falling. The defendant argues that the inconsistencies that the state sought to use were not sufficient to _J^negate beyond a reasonable doubt his self-defense claim: the fact that the knife was in the victim’s left hand and the victim had cigarette burns to his left hand. The defendant contends that the state’s reb-anee on the victim’s use of his non-dominant hand and the fact that he might not *1018 have discarded his cigarette prior to picking up the knife is not sufficient to meet its burden of proof. According to the defendant, a person does not use his dominant hand 100 percent of the time and most people are capable of holding a knife and a cigarette in the same hand. This argument is without merit.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.[1] The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Hearold, 603 So.2d 731 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence [Bis thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. However, that rule does not establish a stricter standard of review than the rational juror’s reasonable doubt formula, but, instead provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), unit denied, 604 So.2d 973 (La.1992).
This court’s authority to review questions of fact in a criminal case is limited to the sufficieney-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), unit denied, 499 So.2d 83 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Brown, 29,708 (La.App.2d Cir.9/24/97), 702 So.2d 744, writ denied, 97-2549 (La.1/30/98), 709 So.2d 703; State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
*1019 Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and the deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Cotton, 25,940 (La.App.2d Cir.3/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1st Cir. 1992), writ denied, 92-2351 (La.5/12/95), 654 So.2d 346. If the defendant makes a claim of self-defense, then the state has the affirmative duty of proving beyond a reasonable doubt that the killing was not in self-defense. State v. Harris, 26,411 (La.App.2d Cir.10/26/94), 645 So.2d 224.
On appeal, the relevant inquiry is whether any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense after viewing the evidence in the light most favorable to the prosecution. State v. Cotton, supra.
Manslaughter is defined in part as a homicide which would be first or second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La. R.S. 14:31(1). The verdict of manslaughter is responsive to the charge of second degree murder. La.C.Cr.P. art. 814(A)(3).
There is no dispute that the defendant shot and killed the victim. The only issue is whether or not the shooting was in self-defense. Before and after the defendant was informed of his rights under Miranda, he told Deputy Crum that the victim pulled a knife on him and he had to shoot the victim. Deputy Crum found a 17knife in the victim’s left hand. However, Terry Poland, the son of the victim, testified that his father was right-handed.
According to Deputy Posey, the victim also had a knife in his right front pocket. Deputy Posey found a silver can, a cigarette butt, a cigarette lighter and a beer can on the ground near the victim. Deputy Posey also found what appeared to be burnt cigarette paper on the fingers of the victim’s left hand. After Deputy Posey read the defendant his rights, the defendant told him that the victim “came at [him] with an attitude and ... hit [him] twice with a knife and [he] shot [the victim] in self-defense.” According to Deputy Posey, the bullets found in the murder weapon were a target practice type bullet.
Dr. Steven Hayne, an expert in forensic pathology, testified that the marks on the victim’s face and back were consistent with an individual falling on a relatively hard surface, as were the two small contusions located on the back of the victim’s left hand and wrist. Dr. Hayne could not exclude these contusions as defensive posturing injuries, but found that they would not be consistent with a striking of another human being with that extremity.
Dale Ingram, who was at the defendant’s residence on the day of the shooting, testified that the victim did not say anything belligerent to him or the defendant.
The evidence to negate the claim of self-defense in this case is not overwhelming. However, this court will not assess the credibility of witnesses or reweigh the evidence to overturn the fact finder’s determination of guilt. Therefore, we cannot say that the jury erred in finding that the defendant did not act in self-defense. The evidence shows that the victim was right-handed. However, he was found holding the defendant’s knife in his left hand. It also appeared that the victim was smoking a cigarette with his left hand at the same time. The victim’s own pocket knife remained folded up in his right front pocket. Although the defendant claimed that the victim hit him twice with the | sknife, the defendant was not wounded. Also, the evidence failed to show that the defendant tried to fight off his attacker. Based upon the evidence presented, a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the homicide was not committed in self-defense.
*1020 GRAND JURY TESTIMONY
The defendant argues that the trial court erred in admitting into evidence his grand jury testimony in this case. According to the defendant, grand jury testimony is to be kept secret, except for very specific circumstances which are not present here. The defendant argues that the grand jury testimony was used in the prosecution’s case-in-chief, where the defendant chose not to take the stand. The defendant asserts that the use of the testimony, without even the pretext that it was to be used for impeachment, is the most egregious sort of violation.
The prosecution contends that the grand jury testimony of a defendant may be used against him at trial. La.C.Cr.P. art. 433 directs that the testimony of a grand jury witness who later becomes the target of the grand jury may not be used against him.[2] The prosecution points out that this article makes no specific | gprovision to prevent the use of testimony of someone already the target of the grand jury, who is represented by counsel when he testifies before the grand jury. The prosecution argues that if the legislature had intended such a result, the article would have specifically so stated.
In further support of its argument for the use of the defendant’s grand jury testimony, the prosecution cites La.C.Cr.P. art. 439.1 which provides that where individuals are ordered to appear before the grand jury and are not allowed to assert their right against self-incrimination, but are compelled to testify, the testimony or other information compelled under the order, or any information directly or indirectly derived therefrom, may not be used against the witness in any criminal case, except a prosecution for perjury. According to the prosecution, this provision would not be necessary if the secrecy of grand jury proceedings automatically prohibited the use of such testimony.
La. Const. Art. 5, § 34 provides that there shall be a grand jury or juries in each parish. The constitutional provision further provides that the qualifications, duties, and responsibilities for that body, as well as the secrecy of the proceedings, which includes the identity of witnesses, shall be provided by law. In fulfillment of this requirement, La.C.Cr.P. art. 434(A) provides:
Members of the grand, jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to *1021 defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose testimony before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court. [Emphasis supplied.]
|1ftLa.C.Cr.P. art. 434 allows for only two exceptions to the requirement of secrecy of grand jury proceedings — -to reveal statutory irregularities or to show that a witness committed perjury in his testimony before the grand jury. The jurisprudence provides one additional exception. When the testimony before a grand jury encompasses exculpatory material, the defense is entitled to an in camera inspection and production of that information. See State v. Peters, 406 So.2d 189 (La.1981). The defendant, however, must provide specific information of the existence of inconsistent statements. A court is not required to make an in camera inspection in response to the defendant’s general request for grand jury testimony. State v. Ates, 418 So.2d 1326 (La.1982).
We further note that no statutory or jurisprudential authority specifically allows for the use of a defendant’s grand jury testimony for all purposes. We have found some limited authority for the use of such testimony to impeach the defendant, should he chose to take the stand at his criminal trial. See State v. Jones, 263 La. 1012, 270 So.2d 489 (1972); State v. Tanner, 425 So.2d 760 (La.1983); State v. Bender, 598 So.2d 629 (La.App. 3d Cir. 1992), writ denied, 605 So.2d 1125 (La.1992).
The question presented by this case is not whether the defendant is entitled to use the testimony of a grand jury witness for impeachment purposes at trial, but whether the grand jury testimony of the defendant may be used against him as direct evidence at trial.
Numerous cases in our jurisprudence have recounted the reasons for the policy that the secrecy of grand jury proceedings should be carefully maintained. A recent pronouncement by the Louisiana Supreme Court in In Re Grand Jury, 98-2277 (La.4/13/99), 737 So.2d 1, outlined the considerations for secrecy in the grand jury:
_Jj2Secrecy helps to prevent the escape of prospective indictees by providing no forewarning to them of the investigation in progress; it insures that the grand jury investigation can proceed freely by protecting the grand jurors from outside influences and threats of reprisal; it serves to prevent the subordination [sic] of perjury and tampering of witnesses by targets of the investigation; it promotes free and open disclosure of information by witnesses without fear of retaliation; and finally, it acts as a shield by protecting innocent people under investigation from the injury to their reputations that could be caused by the disclosure of baseless accusations. State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).
If a target testifies in the grand jury, however, these considerations for secrecy are obviated. While certainly it is important that the testimony of witnesses be kept secret, it is not compelling that the statements of the defendant, who knows he is the target of the investigation, be excluded from the trial on the merits.
Before 1986, the defendant testifying before the grand jury had no right to have his attorney present. Now, under La. C. Cr. P. art. 433(2), the defendant has a right to have his counsel present and to consult with that counsel. Further, the article goes on to say that if a witness later becomes a target, then that witness’ testimony is not admissible. No such provision is made for an individual who chooses to testify before the grand jury, knowing that he is the target of the investigation. This *1022 omission indicates that the voluntary testimony of a target may.be used against him.
In the case sub judice, the defendant was the target of the grand jury investigation and was represented by counsel throughout the proceedings. On August 7, 1997, the Honorable Judge Rudolph McIntyre, Jr., signed an order showing the defendant had been charged with second degree murder, set a bond of $200,000 and appointed James M. Stephens as his attorney. The defendant came before the court on August 12, 1997, with his attorney to obtain hearing dates for a preliminary examination and a bond reduction hearing. Later in the month, defendant’s attorney also filed a motion for discovery. On September 3,1997, the | ^defendant testified at the grand jury with his counsel present. On the record he was informed that he was the target of a grand jury investigation, that he had the right to talk with his lawyer, and that he had the right to have his lawyer present while being questioned. The defendant then agreed to waive his right to remain silent, and to give evidence to the grand jury. Thereafter, the defendant recounted his version of the incident to the grand jury.
The defendant has a right to have access to his grand jury testimony under La. C.Cr.P. art. 716, and pursuant to this discovery, the defendant was given a copy of his testimony. At trial, the court heard arguments from both sides before allowing the state to introduce the defendant’s grand jury testimony. Thus, the veil of secrecy that surrounds grand jury proceedings was only pierced at trial, after the court had specifically and carefully considered the issue and then ruled on the admissibility of the testimony.
On this res nova issue, we see no compelling reason why the defendant’s testimony should not be introduced by the state as probative evidence. The defendant desired to testify before the grand jury, he had his attorney present, and he knowingly waived his right to remain silent. While the defendant apparently thought he would convince the jurors that he acted in self-defense, his testimony contained inconsistencies that must have persuaded the jurors of his culpability. Further, the defendant was given discovery of his statement, and the court made a specific ruling on the issue of admissibility of the testimony. To find under these circumstances, with all the constitutional safeguards in place, that the defendant’s testimony before the grand jury could not be admitted as probative evidence at trial would be ludicrous. That type of decision would allow a defendant to fully confess before the grand jury, then invoke his Fifth Amendment right against self-incrimination at trial, resulting in the confession being inadmissible against him. |13We find, therefore, that when a defendant freely and voluntarily testifies, with his right to counsel observed, and knowingly and intelligently waives his right to remain silent, and his discovery request is properly answered, there is no prohibition to his statements to the grand jury being presented at trial.
EXCESSIVE SENTENCE
Following his conviction for manslaughter, the trial court sentenced the defendant to serve forty years at hard labor, with credit for time served. The defendant argues on appeal that the trial court imposed an excessive sentence.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an *1023 adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense |14of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum sentences are reserved for the worst offenders and the worst offenses. State v. Delaughter, 29,974 (La.App.2d Cir.12/10/97), 703 So.2d 1364, writ denied, 98-0018 (La.5/1/98), — So.2d —, 1998 WL 234691. A trial court is not required to render a suspended sentence or probation on a first felony offense. The judge may consider whatever factors he deems important to a determination of the best interest of the public and the defendant. State v. Delaughter, supra.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
In this case, the trial court ordered a presentence investigation and received numerous letters from the family of the victim and that of the defendant and considered input from other members of the community. All agreed that the defendant was a violent individual who frequently carried a gun and had a volatile temper. The defendant’s own children indicated that he was abusive and requested that he receive the maximum sentence available under the law for the present offense. The court also noted that the defendant, who was 59 years old at the time of sentencing, drank heavily and had a blood alcohol content of .179 percent after his arrest on the night of the offense.
The court also noted that the defendant was a first felony offender and had a minor criminal history including a 1980 conviction for disobeying a stop sign, a 1992 conviction for driving while intoxicated, first offense and expired driver’s license, and a 1997 conviction for simple battery. The defendant’s record also |1Bshowed a bench warrant in 1987 for disturbing the peace and a 1989 arrest for unauthorized use and criminal damage to property. The disposition of that charge was unknown. The defendant was also charged in 1991 with aggravated assault but the victim of the offense dropped the charges.
The court found that there was an undue risk that the defendant would commit another offense if given a suspended sentence. The court determined that the defendant was in need of correctional treatment best provided by a custodial environment and that a lesser sentence than that actually imposed would deprecate the seriousness of the offense. The court noted that the defendant expressed no remorse in this case but insisted that he acted in self-defense. Particularly in light of the “real concern” in the community regarding the defendant’s violent nature, the court found that the maximum sentence available under the statute was warranted in this case.
The trial court in this case adequately complied with the provisions of La.C.Cr.P. art. 894.1 and articulated the reasons taken into consideration for imposing sentence. Further, in light of the defendant’s propensity for violence and his lack of remorse over the killing of his own cousin, we find that the sentence imposed is tailored to both the offender and the offense. The sentence imposed does not shock our *1024 sense of justice. The defendant’s argument that the sentence is excessive is without merit.
CONCLUSION
For the reasons stated above, we find that there was sufficient evidence upon which to base the defendant’s conviction for manslaughter. We also find that the trial court did not err in allowing the defendant’s grand jury testimony to be 11fiused against him at trial. We also find that the sentence imposed was not excessive. The defendant’s conviction and sentence are affirmed.
AFFIRMED.
WILLIAMS, J., dissents and assigns written reasons.

. The claim of insufficient evidence may be raised in a motion for post verdict judgment of acquittal. La.C.Cr.P. art. 821. In the present case, the record does not show that the defendant made such a motion, but does contain an assignment of error which contends that the evidence was insufficient to prove the defendant’s conviction. Appellate review is mandated by the assignment of error of the sufficiency of the evidence to convict, whether or not the defendant exercised his La.C.Cr.P. art. 821 option in the trial court. La.C.Cr.P. art. 920; State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.

. La.C.Cr.P. art. 433 provides:
A.(1) Only the following persons may be present at the sessions of the grand jury:
(a) The district attorney and assistant district attorneys or any one or more of them;
(b) The attorney general and assistant attorneys general or any one of them;
(c) The witness under examination;
(d) A person sworn to record the proceedings of and the testimony given before the grand jury; and
(e) An interpreter sworn to translate the testimony of a witness who is unable to speak the English language.
(2) An attorney for a target of the grand jury’s investigation may be present during the testimony of said target. The attorney shall be prohibited from objecting, addressing or arguing before the grand jury; however he may consult with his client at anytime. The court shall remove such attorney for violation of these conditions. If a witness becomes a target because of his testimony, the legal advisor to the grand jury shall inform him of his right to counsel and cease questioning until such witness has obtained counsel or voluntarily and intelligently waived his right to counsel. Any evidence or testimony obtained under the provisions of this Subparagraph from a witness who later becomes a target shall not be admissible in a proceeding against him.
B. No person, other than a grand juror, shall be present while the grand jury is deliberating and voting.
C. A person who is intentionally present at a meeting of the grand jury, except as authorized by Paragraph A of this article, shall be in constructive contempt of court.